A. B. STICKNEY *et al.*

*v.*

WILLIAM C. GOUDY.

*Filed at Ottawa March 29, 1890.*

1. CHANCERY—*jurisdiction—giving compensatory damages—for a breach of contract—retaining a case for all purposes.* While it may be true that a bill in equity can not be maintained when it is brought merely for the purpose of recovering damages for the breach of a contract, it does not follow that a court of equity will in no case decree compensatory damages. If the controversy contains any equitable feature which authorizes a court of equity to take cognizance, that court will retain jurisdiction for all purposes, and establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority.

2. So when a court of equity once acquires jurisdiction, as, for the enforcement of a trust, or in cases of fraud, or where the remedy at law

is inadequate, it may retain the cause for all purposes, and administer legal redress as well as equitable relief.

3. It was alleged in a bill in chancery that certain railway stock and a note were owned by a railway company, which that company had agreed to sell to G for a certain sum of money; that they were placed in the hands of D, as a trustee, to be delivered upon the payment of such money; that D had violated his duty, as trustee, by disposing of the stock and note, and that the person to whom he delivered them had notice of the trust, and sought to enforce the trust: *Held,* that the bill showed a case of equitable jurisdiction.

4. It was also alleged, that G, and others named, conspired and confederated together to defraud the complainant's assignees, and to induce them to enter into the contract, and to pay $20,000 to G: *Held,* that a court of equity clearly had jurisdiction to grant relief against fraud and conspiracy, and to render a decree requiring the repayment of the money so obtained, and that if G had also violated his contract in relation to the same subject matter, whereby the complainant had sustained damages, the court had the right to render a decree therefor.

5. RES JUDICATA—*how far conclusive—and in respect to what matters.* Where the subject matter of a cause of action has been once determined by the final judgment or decree of a court of competent jurisdiction, such judgment or decree will be conclusive between the parties thereto, and will be a bar to any other proceeding on the same cause of action.

6. In an action to recover damages for the breach of a contract, the defendant pleaded that the beneficial plaintiff, prior to the action, filed his bill in equity against the defendant and others, founded upon the same contract, in which its breach was alleged and made the basis of the equitable relief sought. Issues were formed involving the question of the defendant's breach of the contract, and his liability therefor, when the cause was removed to the United States Circuit Court, where a final decree was rendered, dismissing the bill as to the defendant and some others, co-defendants. There were equitable features in the case, which gave a court of equity jurisdiction. After such decree, an action at law was brought for the use of the complainant in the bill, and the defendant pleaded the decree of the United States court in bar, setting up the proceedings on the bill, and showing the identity of the parties and the subject matters litigated: *Held,* that the plea was good on demurrer, and showed a bar to the action at law.

7. Where the question of damages is involved in a suit in chancery by the pleadings, and the decree shows that all relief is denied to the complainant upon all matters and things in controversy, except as to money paid by one of the defendants, it will be presumed that the question of the right to damages was decided adversely to the complainant.

8.  Where a bill in chancery is dismissed without qualification, the decree is conclusive as to all matters involved in the issues which are decided or might have been decided, the presumption being, that it was a final and conclusive adjudication upon the merits, whether they were or were not in fact determined, unless the decree proves they were not, or that fact is apparent on the face of the decree.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit, brought by A. B. Stickney and James J. Hill, for the use of James J. Hill, against William C. Goudy, to recover damages for an alleged breach of contract.  The declaration contained two special counts.  Each count of the declaration sets up three contracts in writing, all executed on the 28th day of May, 1880.  The first count sets out the three contracts *in hæc verba,* and avers that each was a part of the same transaction, and together constituted, in effect, one contract.  The contract first set out in the declaration was executed by William C. Goudy, party of the first part, and A. B. Stickney & Co., party of the second part. The second was executed by and between the Chicago and Evanston Railroad Company, of the first part, and William C. Goudy, of the second part.  The third was executed by A. B. Stickney & Co., of the first part, and the Chicago and Evanston Railroad Company, party of the second part.  In the first contract, the party of the first part, William C. Goudy, agreed:

"*First*—That he will perform, all and singular, the covenants and agreements, on his part, contained in a certain contract, bearing even date herewith, by and between the Chicago and Evanston Railroad Company, party of the first part, and William C. Goudy, party of the second part, a copy of which is hereto attached, marked 'Exhibit A,' and made a part of this contract.

"*Second*—That he will, at the time of the execution of this contract, cause to be properly assigned to John DeKoven, as

a trustee, 875 shares of the capital stock of the Chicago and Evanston Railroad Company, to be held by him in trust for the purposes hereinafter specified; that he will also, at the same time, cause to be properly assigned to said John DeKoven, as trustee, a certain note, bearing even date herewith, made by the Chicago and Evanston Railroad Company to the North Chicago City Railway Company, for the sum of $36,847.75, payable in one year from date, with eight per cent interest, to be held by him in trust for the purpose hereinafter specified; and also that he will, at the same time, cause to be properly assigned to said John DeKoven, as trustee, all his claim and right to the sum of $25,000, which shall become due to him, the said William C. Goudy, from the Chicago and Evanston Railroad Company, on completion of the contract before mentioned, which is hereto attached and marked 'Exhibit A,' to be held by him in trust, for the purposes hereinafter specified."

A. B. Stickney & Co., on their part, agreed to pay Goudy $55,000, as follows: $20,000 on the execution of the contract, $15,000 in ten days after Goudy had performed his contract with the Chicago and Evanston Railroad Company, and $20,000 within sixty days after the $15,000 became due. Stickney & Co. also agreed to perform all the agreements, on their part, contained in a certain contract bearing even date therewith, made by and between the Chicago and Evanston Railroad Company and the parties of the second part, in relation to the construction of a railroad for the Chicago and Evanston Railroad Company. The contract also provided that DeKoven should hold the 878 shares of stock, note for $36,847.75, and assignment of the $25,000 claim, in trust, until the party of the first or second part should become entitled thereto under the contract. The contract further provided, if Stickney & Co. failed to make either of the payments specified, Goudy had the right to forfeit and terminate the contract, and retain all moneys paid, as liquidated damages, and in that event, DeKoven was to deliver the stock, note and claim to Goudy. If,

on the other hand, they made the payments at the time and in the manner specified, DeKoven was to transfer to them the shares of stock, the note and claim so held in trust by him, and they were to be placed in the control of the Evanston Railroad Company. The contract also contains the following provision:

"It is further understood and agreed, that if default be made by the party of the first part in the performance of any of his agreements herein contained, so that the deferred payments of $15,000 and $20,000 shall not become due and payable under this contract, and such default shall continue for three months after the 1st day of March, 1881, then, upon payment by said parties of the second part of the sum of $25,000 to said John DeKoven, trustee, for the use of said party of the first part, in lieu of said deferred payments of $15,000 and $20,000, it shall be the duty of said DeKoven to assign said stock and deliver said promissory note, and the assignment of the claim of said party of the first part against the Chicago and Evanston Railroad Company, in his hands, to said party of the second part, and said party of the second part shall be entitled to recover from the first party such damages as they may sustain by reason of such default, not exceeding $35,000; but in case said second party shall neglect to pay said $25,000 within four months after the 1st day of March, 1881, then said DeKoven shall transfer said stock and deliver said note and assignment in his hands to the first party or his assigns."

Under the second contract, which was executed between the Chicago and Evanston Railroad Company and Goudy, it appears that Goudy agreed, among other things, to procure the right of way for the railroad company, from its terminus in Chicago to Calvary Cemetery, by March 1, 1881, for which he was to receive the donations of certain lands made in aid of the road, and $25,000 in money. This $25,000 was the claim assigned to DeKoven in trust. Under the third contract executed by and between Stickney & Co. and the Chicago and

Evanston Railroad Company, Stickney & Co. agreed to construct and equip a railroad on the right of way to be procured by Goudy, and the road was to be in operation within four months from March 1, 1881.

It is also averred in the first count of the declaration, that at the time of the execution of the contract, the capital stock of the Chicago and Evanston Railroad Company consisted of 1000 shares, of $100 each; that it owned property and franchises of the value of over $150,000; that when the contract was executed, Goudy had control of 875 shares of the stock, and the note involved, which, in connection with the $25,000 claim, he deposited with DeKoven, in trust, and that Stickney & Co. paid the $20,000 cash payment. It is then averred that Goudy did not perform the contract between said railway company and said defendant, or any part thereof, by the 1st day of March, 1881, as provided in said contract with said plaintiffs, but as the time approached for such performance, the defendant applied to the plaintiffs for an extension of time within which to make such performance, and thereupon, by mutual agreement between said plaintiffs and said defendant, the time for such performance was extended until, to-wit, the 1st day of June, 1882, and the time from which the three months should commence to run, after the lapse of which plaintiffs might, under said first mentioned contract, make the alternative payment of $25,000 in lieu of the deferred payments of $15,000 and $20,000, was, by like agreement between plaintiffs and defendant, postponed until, to-wit, June 1, 1881; that on or about May, 1882, and before the said extensions had expired, the said defendant refused absolutely, and has ever since refused, to perform said first mentioned contract on his part, and, without the knowledge of or notice to the plaintiffs, sold and disposed of said stock and said promissory note, and caused and procured said trustee to transfer the same to other persons, who claim to have purchased the same without notice of the rights of said plaintiffs.

To the declaration the defendant interposed two pleas— Nos. 5 and 7. To each of the pleas plaintiffs filed a general demurrer, which was overruled, and judgment rendered against plaintiffs, and the question presented by the record is, whether the facts set up in either plea constitute a bar to the action. The pleas are quite voluminous, and we shall confine ourselves to a brief statement of the substantial matters set up therein as a defense to the action.

In the fifth plea it is set up, that in November, 1882, James J. Hill, who, by assignment from Stickney, was the sole party in interest in the contract between Goudy and Stickney & Co., filed a bill in the circuit court of Cook county, against the Chicago and Evanston Railroad Company, the Chicago, Milwaukee and St. Paul Railway Company, the North Chicago City Railway Company, William C. Goudy, Volney C. Turner, John DeKoven, George Chandler, T. W. Wadsworth, Edwin Walker, Elijah J. Hubbard, Samuel B. Chase, Ebenezer Buckingham, John J. Johnson, J. C. Easton and S. S. Merrill, and in and by said bill the plaintiff therein set forth and stated the contracts in writing set forth in the first count of the declaration herein, and mentioned in the second count, and alleged that this defendant, William C. Goudy, caused to be assigned and transferred, as in said agreement provided, to DeKoven, the 875 shares of stock of the Chicago and Evanston Railroad Company, and said note for $36,847.75, and the claim for $25,000, to be held in trust, as specified in the contract; that the bill alleged the same extension of time for the performance of the contract as averred in the declaration; alleged the same breach by Goudy; performance by Stickney & Co. In and by said bill it was further stated, that this defendant, and the said Turner and DeKoven, transferred and delivered said shares of stock, the note and claim, to a part of the defendants to said bill,—J. C. Easton, T. W. Wadsworth, Edwin Walker, Elijah K. Hubbard, John J. Johnson and S. S. Merrill,—representing the Chicago, Milwaukee and St. Paul Railway Com-

pany, and transferred also the control and management of the Chicago and Evanston Railroad Company to them; and that such steps were taken as resulted in the election of a new board of directors, consisting of the said Wadsworth, Easton, Walker, Hubbard, Johnson and Merrill, of which the said Easton was made president, and the said Wadsworth secretary and treasurer; and it was further alleged that the said Easton, Wadsworth, Walker, Hubbard, Merrill and Johnson had full notice and knowledge, at the time of taking the transfer of said stock, note and claim, and the control of the Chicago and Evanston Railroad Company, of the said contracts set out in said bill, and now set out or described in the declaration herein, and that said Stickney & Co. were not in default, and that said Goudy had no right to said stock, and that neither they, nor the Chicago and Evanston Railroad Company, nor said DeKoven, had any right to transfer said stock or the control of said company to any one but to the said A. B. Stickney & Co. or the said James J. Hill; and it is further averred in and by said bill, that the said defendants therein, Goudy, Turner, Chandler, Chase, Buckingham and DeKoven, conspired and confederated together to defraud the said Stickney & Co. and the said James J. Hill, and to induce said Stickney & Co. to enter into said contract and pay said sum of $20,000 to the said defendant. The bill then prays that the transfers of said note and stock, and all forfeitures, be declared null and void, and that said note and stock be assigned and transferred to complainant, and for general relief.

It is then set up, that the bill was removed to the Circuit Court of the United States, where the several defendants filed separate answers; that in the answer of Goudy, among other things, it was set up, that when the contracts sued upon were executed, the stock and note in question were owned by the North Chicago City Railroad Company; that at the time the three contracts involved were executed, a fourth contract was also executed between Goudy and the North Chicago City

Railway Company, which was submitted to Stickney before the parties executed the same; that the four contracts were in fact one contract, and a part of the same agreement; that in and by said agreement, the North Chicago City Railway Company agreed to sell to said Goudy and his assigns its interest in the shares of the capital stock of the Chicago and Evanston Railroad Company, and said promissory note for $36,847.75, and the said Goudy agreed to pay $25,000 therefor, in the following manner, to-wit: The shares of stock to be assigned to John DeKoven, as trustee, and also the said note to be assigned and delivered to him as trustee, to hold the same until the said sum of $25,000 should be paid to the said DeKoven, as trustee, under a contract of even date, between A. B. Stickney & Co. and the said Goudy, or until there should be default in the payment of the sums of $15,000 and $20,000 or $25,000, as therein provided. From such payments there was to be paid to DeKoven $25,000, for said railway company the sum of $12,500, and in case said two payments should not be made because of the default of Goudy, and Stickney & Co. should elect to pay said sum of $25,000 under the alternative provision of the contract, then the whole of said sum of $25,000 should be paid to the railway company. When the $25,000 should be paid to the railway company, Goudy was to have control of the stock and note placed in DeKoven's hands, and if said sum was not paid, the stock and note were to be returned to the North Chicago City Railway Company.

The answer also set up that Goudy's only right or title in and to the note and stock was by virtue of the contract with the North Chicago City Railway Company, and that he was not entitled to the same until the $25,000 was paid, which was known to Stickney before the contracts were executed; that the note, stock and claim were assigned to DeKoven, as trustee, as stipulated in the contracts. It was also set up that Goudy did not succeed in procuring the right of way before the 1st of

June, 1881, and by reason of such default, the alternative provision by which Stickney had the right to pay the $25,000 to DeKoven took effect, but said sum was not paid, and thereby all right and interest which had been acquired by virtue of said contract, ended, and by the terms of the contract with the North Chicago City Railway Company the note and stock were to be returned to that company by the trustee, which was done, and as Goudy and Stickney & Co. had both failed to make payment of said $25,000, all right and interest in said note and stock ceased, and the same became the property of the railway company. The answer denies the agreement for an extension of time between Goudy and Stickney & Co.

The plea also set up, that in and by said answer it was denied that this defendant, Turner, Chandler, Chase, Buckingham and DeKoven, or any of them, conspired and confederated together to defraud the said Stickney or A. B. Stickney & Co. and the said Hill, or any of them, or induced the said Stickney & Co. to enter into the contract, and to pay the sum of $20,000, but it was averred that the said sum of $20,000 was intended by the parties to the contract to place this defendant in control of funds to pay for services, expenses and damages in procuring the right of way from the city of Chicago to Calvary Cemetery; and it was further averred, that *bona fide* efforts were made by this defendant to procure the said right of way, and in the course of the same he earned and spent a large sum of money, which the payment of $20,000 was intended to meet; and it was claimed in said answer, that by the terms of the contract this defendant received and was entitled to hold the full sum of $20,000, without any right of the said Stickney or A. B. Stickney & Co. to re-payment of the same, or any part thereof. The plea also set up that evidence was taken, and the cause heard, and a final decree rendered, which is set out *in hæc verba*, which is in full force, and that each of the counts in said declaration is for the same cause of action determined in the cause in equity.

The seventh plea sets up the commencement of the suit in equity, its removal to the United States court, the allegations of the bill and answer, and also sets out *in hæc verba* the contract, the contract between Goudy and the North Chicago City Railway Company. The plea, among other things, contains the following: "And this defendant avers, that in and by the pleadings in said suit in chancery, it became and was a material question as to whom the said 875 shares of stock, and the said promissory note for $36,847.75, belonged at the time of the making of the said contract on the 28th day of May, 1880, and it became and was a material question as to who were the real parties to the contract by which said shares were sold; and it became and was a material question as to the performance by the said A. B. Stickney and James J. Hill of their part of said contract, so as to entitle them to the possession of the shares of stock and note, and the performance of the other provisions of said contract, upon the payment of $25,-000 into court, as was offered in said bill; and it became and was a material question as to whether or not an extension of time had been made for the performance by this defendant, and the performance by the said A. B. Stickney and James J. Hill; and it became and was a material question as to whether there was any subsisting contract by said several separate agreements, bearing date May 28, 1880, at the time the bill of complaint therein was filed; and it became and was a material question as to whether or not the said James J. Hill for whose use this suit is brought, had any right, existing at the time of the filing of the bill, under and by virtue of the provisions of the said several agreements, dated May 28, 1880, constituting, as they did, one contract; and this defendant avers that issues of fact were made by the pleadings in said suit in chancery as to each and every one of said questions, and evidence was taken upon said issues by all of the parties in said suit." The plea then sets out, in substance, the final decree rendered in said cause, and avers the questions, as

aforesaid, will each and every one necessarily arise on the trial of this suit, for determination; wherefore defendant avers that plaintiffs are estopped, etc.

Messrs. STILES & LEWIS, and Messrs. ELA & GROVER, for the appellants:

Where a matter has once been litigated and determined between two parties, the judgment or decree rendered is a bar to any further litigation between the same parties.  Bigelow on Estoppel, 7; *Hanna* v. *Reed,* 102 Ill. 603; *Cromwell* v. *Sac County,* 94 U. S. 351.

The essential elements that render a judgment a bar to any matter involved in a subsequent suit are:

*First*—The former judgment must have been rendered by a court of competent jurisdiction of the subject matter and of the parties.  Bigelow on Estoppel, 15, *et seq.*

*Second*—The matter claimed to have been adjudicated must have been at issue in such former suit, and material to its determination.  (Freeman on Judgments, sec. 256, *et seq.*)  A matter may be put at issue by the pleadings, or by being given in evidence under appropriate pleadings.  In the former case the record will show that it was at issue; in the latter case parol evidence will be necessary for that purpose.  Such evidence is always proper when it is consistent with the record. *Packet Co.* v. *Sickles,* 5 Wall. 580; *Campbell* v. *Rankin,* 99 U. S. 261; *Foye* v. *Patch,* 132 Mass. 105.

*Third*—The matter in question must have been at issue between the same parties, or those in privity with them. Bigelow on Estoppel, 59; Freeman on Judgments, sec. 158.

*Fourth*—The matter must have been submitted for adjudication.  *Barger* v. *Hobbs,* 67 Ill. 592.

*Fifth*—The judgment must be final upon the merits, and must be of such a character as necessarily to embrace the matter in question.  Bigelow on Estoppel, 29, 32; Freeman on Judgments, sec. 260; *Burlen* v. *Shannon,* 99 Mass. 200.

The question of appellee's liability for damages was not within the proper jurisdiction of the court in the equity case. Where the equitable jurisdiction fails for defect of proof, or other reason, the court is without jurisdiction, and the bill should be dismissed without prejudice. 2 Story's Eq. Jur. sec. 799; *Dowell* v. *Mitchell,* 105 U. S. 430; *Smith* v. *Kelly,* 56 Me. 64; *Slaughter* v. *Tindle,* 1 Litt. 358; *Bowie* v. *Stone-street,* 6 Md. 418; *Tainter* v. *Cole,* 120 Mass. 162; *Scott* v. *Billgencey,* 40 Miss. 141; *McQueen* v. *Choteau's Heirs,* 20 Mo. 222; *Welsh* v. *Bayard,* 21 N. J. Eq. 186; *Kennedy* v. *Hazelton,* 128 U. S. 667; *Doan* v. *Mauzey,* 33 Ill. 227; *Oliver* v. *Croswell,* 42 id. 41.

The pleas do not show that appellee's liability for damages was in fact litigated and determined in the equity case. *Packet Co.* v. *Sickles,* 5 Wall. 592; 1 Pomeroy's Eq. Jur. sec. 181.

It must be shown, from the decree or other evidence, that the question of damages was decided. *Hooker* v. *Hubbard,* 102 Mass. 245; *Burlen* v. *Shannon,* 99 id. 200; *Lea* v. *Lea,* id. 493; *Sawyer* v. *Woodbury,* 7 Gray, 499; *Hawley* v. *Simmons,* 102 Ill. 115; *Bentley* v. *O'Bryan,* 111 id. 53; *Riverside Co.* v. *Townshend,* 120 id. 18; *Chicago* v. *Cameron,* id. 459.

Mr. W. C. GOUDY, *pro se:*

When a court of equity has jurisdiction over a cause for any purpose, it may retain it for all purposes. Pomeroy's Eq. Jur. secs. 181, 236; *People* v. *Chicago,* 53 Ill. 424; *Oelrichs* v. *Spain,* 15 Wall. 211; *Keton* v. *Spradling,* 13 Mo. 321; *Cowles* v. *Pollard,* 51 Ala. 445; *Youmans* v. *Pollard,* 26 N. J. Eq. 149.

When fraud is alleged, and the court obtains jurisdiction on account of it, it will retain and give complete relief. *Bradley* v. *Bosley,* 1 Barb. Ch. 125; *Billups* v. *Sears,* 5 Gratt. 31; *Clarke* v. *White,* 12 Pet. 178.

When a bill is dismissed without any saving words, or showing that it was not decided on the merits, it is conclusive as to all the questions decided or which might have been de-

cided. Herman on Estoppel, secs. 210, 400, 402-404; Freeman on Judgments, sec. 270; *Bigelow* v. *Winsor,* 1 Gray, 299; *Blackington* v. *Blackington,* 113 Mass. 231; *Knowlton* v. *Hanbury,* 117 Ill. 475; *Lyons* v. *Cooledge,* 89 id. 529; *Garrick* v. *Chamberlain,* 97 id. 639; *Dunning* v. *Aurora,* 40 id. 487; *Mey* v. *Gulliman,* 105 id. 285.

The decree is conclusive as to all questions that might have been decided. *Bennett* v. *Mining Co.* 119 Ill. 9; *Mix* v. *People,* 116 id. 265; *Harmon* v. *Auditor,* 123 id. 122.

When a point or question is decided in one case between the same parties, it can not be raised again in another suit, though the cause of action be not the same. *Attorney General* v. *Railroad Co.* 112 Ill. 520; *Hanna* v. *Read,* 102 id. 596; *Peterson* v. *Nehf,* 80 id. 25; *Tilley* v. *Bridges,* 105 id. 336; *Ruegger* v. *Railroad Co.* 103 id. 449; *Hamilton* v. *Quimby,* 46 id. 90; *Rogers* v. *Higgins,* 57 id. 244.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This action was brought, as it will be observed, to recover damages for an alleged breach of contract, and the question presented by the pleas is, whether the same matter was adjudicated in the suit in equity set up in the pleas. If it was, the decree will be a bar to this action.

It is a well established rule, that where the subject matter of a cause of action has been once determined by a final judgment or decree in a court of competent jurisdiction, another suit can not be maintained between the same parties on such cause of action. The decree or judgment first rendered will be conclusive between the parties. The principle upon which the doctrine of *res judicata* rests, was stated in *Hanna* v. *Read,* 102 Ill. 602, to be, that justice and public policy alike demand that a matter, whether consisting of one or more questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled

in any subsequent litigation between the same parties, where the same questions arise.

It is conceded that the Circuit Court of the United States, where the case in equity was determined, was a court of competent jurisdiction, that it had jurisdiction of the suit in question and of the parties to that suit, and that it was competent to decide any question which it was legitimate and proper for it to decide in that case. The identity of the parties in the two suits is also admitted. But it is insisted that the Circuit Court of the United States had no jurisdiction to decide the question of Goudy's liability for damages. It may be conceded that a bill in equity could not be maintained where the bill was brought merely for the purpose of recovering damages for the breach of a contract; but while this is true, it does not follow that a court of equity will in no case decree compensatory damages. Where a court of equity obtains jurisdiction in a cause for one purpose, it may retain it for all purposes. In speaking on this subject, Pomeroy (vol. 1, sec. 181,) says: "When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. For this reason, if the controversy contains any equitable feature, or requires any purely equitable relief which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights, and grant legal remedies which would otherwise be beyond the scope of its authority." In speaking of the jurisdiction of a court of equity to award damages, Story says: "In the present state of the authorities, involving, as they certainly do, much conflict of opinion, it is not possible to affirm more than that the jurisdiction for compensation or damages does not ordinarily attach in equity, except as ancillary to a specific performance, or to some other relief. If it

does attach in any other cases, it must be under very special circumstances and upon peculiar equities, as, for instance, in cases of fraud, or in cases when the party has disabled himself, by matters *ex post facto*, from a specific performance, or in cases where there is no adequate remedy at law." 2 Story's Eq. Jur. sec. 799.

A bill for the specific performance of a contract to convey land, where the complainant knew before he brought the bill that his vendor had parted with the title to the land, will not, as a general rule, be retained to assess damages for a failure to perform the contract. This rule was announced in *Kennedy* v. *Hazelton*, 128 U. S. 667, where the court said: "Specific performance can not be decreed of an agreement to convey property which has no existence or to which the defendant has no title; and if the want of title was known to the plaintiff at the time of beginning suit, the bill would not be retained for assessment of damages." The same doctrine was announced by this court in *Doan, King & Co.* v. *Mauzey*, 33 Ill. 227. These, and many other cases of like import, where it was held damages could not be recovered on a bill for specific performance, have been cited by appellant to show that a court of equity had no jurisdiction to award damages on the contracts involved in this case, and hence the decree was not *res judicata*. Had the bill here involved been one for specific performance, merely, and the relief prayed for had been refused, there would be much force in the position of appellant. But upon an examination of the allegations of the bill, as shown by the pleas, it will be found that various matters are involved which fall within the peculiar jurisdiction of a court of equity. The stock and note, as appears from the contracts, were owned by the North Chicago City Railway Company. The company had agreed to sell them to Goudy for a certain sum of money, and they were placed in the hands of DeKoven, as a trustee, to be delivered, as per a contract, upon the payment of a certain sum of money. The bill charged that DeKoven had violated

his duty as trustee by disposing of the stock and note,—trust property,—and that the person to whom they were delivered had notice of the trust. If this allegation was true, and could have been sustained by proof, the trust property could have been reached. The bill, then, on this branch of the case, was one to enforce a trust. Another charge in the bill, as shown by the pleas, was, that Goudy, Turner, Chandler, Chase, DeKoven, and others, conspired and confederated together to defraud Stickney & Co., and to induce them to enter into the contract and pay $20,000 to Goudy. Here was an alleged fraud, under which complainants, through a conspiracy, had been cheated out of $20,000. Undoubtedly a court of equity had jurisdiction to grant relief against fraud and conspiracy, and render a decree requiring the repayment of the money. The bill contained other allegations, upon which other equitable relief was predicated. The control of a railroad company, the right to forfeit shares of stock, the election of a board of directors, the validity of the assignment of stock and a note, and other matters, were involved.

It is thus seen that the position that the bill was one for specific performance, merely, is not tenable. The contracts upon which this action is predicated were all before the court in the equity case. Having been set up in the bill and answer, equitable relief was claimed under these contracts. Under the allegations of the bill that trust property had been wrongfully transferred to other parties, in violation of the terms of a contract establishing the trust, and under the allegations establishing fraud in the procurement of $20,000, the court of equity was clothed with jurisdiction of the cause, and having acquired jurisdiction for one purpose, it had the power to retain the cause for all purposes; and if the defendant Goudy had violated his contract, as was claimed, and complainant had thereby sustained damages, the court had the right to go on and render a decree for the amount established by the evidence.

But it is said, conceding that it was within the jurisdiction of a court of equity to adjudicate upon appellee's liability for damages, the pleas do not show that such question was in fact litigated and determined. That part of the decree which is material is as follows: "It is ordered and decreed that the complainant's bill be dismissed for want of equity as against the defendants William C. Goudy, Volney C. Turner, George Chandler, Samuel B. Chase, Ebenezer Buckingham, John De-Koven, John J. Johnson, S. S. Merrill, the North Chicago City Railway Company, and the Chicago, Milwaukee and St. Paul Railway Company, with their costs, to be taxed by the clerk. It is further ordered and decreed, that so much of the complainant's bill as relates to the certificate of 110⅔ shares of the capital stock issued to A. B. Stickney & Co., dated September 30, 1881, be dismissed for want of equity. It is further ordered and decreed, that all relief be denied to the complainant upon all matters and things in controversy herein except as to the amount of money paid by the defendant William C. Goudy for right of way, in execution of the contract between him and A. B. Stickney & Co., of May 28, 1880; and for the purpose of ascertaining said amount of money, it is ordered that this cause be retained as to the other defendants, and that it be and is referred to the master in chancery to take proof." Upon the coming in of the report of the master the court decreed as follows: "That the Chicago and Evanston Railroad Company do forthwith pay unto said complainant the sum of $6513, together with interest upon the same from the 30th of January, 1887, at six per cent, and also costs of said reference to the master, to be taxed by the clerk of this court, and also the costs of this suit, for which plaintiff may have execution. It is further ordered and decreed, that all other relief prayed in the complainant's bill be denied as against said defendant the Chicago and Evanston Railroad Company, and that the complainant's bill be dismissed out of court for want of equity as against the remaining defendants, T. W. Wadsworth, Ed-

win Walker, Elijah K. Hubbard, J. C. Easton, Julius Wadsworth, Hugh T. Dickey, J. Millbank, James Stillman, James T. Woodward, E. L. Frank, William Rockafeller, Selah Chamberlain and George Smith, with their reasonable costs to be taxed."

Whether, as a matter of fact, in deciding the suit in equity, the court passed upon the question of damages, does not appear from the decree. It does, however, appear from the decree, that all relief was denied complainant upon all matters and things in controversy except as to the amount of money paid by Goudy for right of way. As the question of damages was involved and was in controversy, the fair inference from the language of the decree is that it was decided. But however that may be, the decree is *res judicata* whether the court passed on the question of damages or not. Where a bill is dismissed without qualification, the decree is conclusive as to all matters involved which are decided or which might have been decided.

In Herman on Estoppel (sec. 403,) it is said: "A general dismissal of a bill may be pleaded in bar to a subsequent bill for relief on the same subject matter. For the reason that a dismissal of a bill in chancery stands nearly on the same footing as a judgment for the defendant in an action at law, the presumption is that it was a final and conclusive adjudication upon the merits, whether they were or were not determined, unless the decree of the court proves that they were not determined, or that fact is apparent on the face of the decree."

In Freeman on Judgments (sec. 270,) it is said: "The dismissal of a bill in chancery stands nearly on the same footing as a judgment at law, and will be presumed to be a final and conclusive adjudication on the merits, whether they were or were not heard and determined, unless the contrary is apparent on the face of the pleadings or in the decree of the court."

The question is not, however, a new one in this court. In *Rogers* v. *Higgins*, 57 Ill. 244, it was held, that the principle

of *res judicata* embraces not only what has actually been determined, but also extends to any other matter properly involved, and which might have been raised and determined in it. The same question arose in the late case of *Harmon* v. *Auditor*, 123 Ill. 122. It is there said: "Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions within the issue, whether formally litigated or not." There are other cases in this court where the same rule has been announced; but it will not be necessary to cite them, as we regard the rule well established in this court.

We think the decree in the equity case was a bar to this action, and the circuit and Appellate courts decided right in overruling the demurrer to the pleas.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

MAGRUDER, J.:    I do not concur.