JULIA A. DRUM, Appellee, *vs.* STEPHEN H. DRUM *et al.*— (EDWARD DRUM, Appellant.)

*Opinion filed June 20, 1911—Rehearing denied October 12, 1911.*

1. APPEALS AND ERRORS—*when admission of incompetent evidence in chancery case will not reverse.* The admission of incompetent evidence in a chancery case is not ground for a reversal if there is sufficient competent evidence to sustain the decree, as it is presumed by the court of review that the chancellor considered only the competent evidence.

2. DEEDS—*when a decree reforming a mistake in a deed is authorized.* A decree reforming a deed from one of the heirs to the widow so as to make it convey a fee simple title instead of a life estate is authorized, where the proof is clear that the heirs and the widow intended by their agreement to make a fair division of the property between them and that the mistake in the deed was mutual and common to both parties to the deed.

3. EQUITY—*when a court of equity may establish legal rights.* Where a controversy contains equitable features which authorize a court of equity to take jurisdiction of the case, that court should retain jurisdiction for all purposes, and may establish purely legal rights and grant legal remedies growing out of the contract in suit which might otherwise be cognizable only in a court of law.

4. SAME—*when a decree ordering payment of money is proper.* Where the assignment to the widow of all claims for money due the intestate, including a claim for a certain amount of rent due

him from an heir, is a part of the transaction whereby the widow and heirs made a division of the property without administration, it is not improper, on granting the prayer of a bill to correct a mistake in the deed made to the widow as a part of that transaction, to decree payment, by the heir, of the claim for rent, as further prayed in the bill under appropriate allegations as to facts.

5. SAME—*when it is error to decree the payment of interest.* Where a court of equity, as an incident to the equitable relief granted, decrees the payment of a sum of money which the defendant had agreed to pay to complainant, it is error to decree payment of interest on such amount where there is no evidence of facts which would justify the allowance of interest had a suit been brought in a court of law to recover the money.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

McDOUGALL & CHAPMAN, for appellant.

C. G. FAXON, and BROWNE & WILEY, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Edward W. Drum died intestate in LaSalle county, Illinois, on September 12, 1900. He left surviving appellee, Julia A. Drum, his widow, and Edward Drum (appellant) and Stephen H. Drum, his only children and only heirs-at-law. He died seized of one hundred and thirteen acres of land in Northville township and one hundred acres of land in Adams township, in LaSalle county, and at the time of his death owned a note for $2000, secured by a mortgage on the farm of his son Stephen H. Drum, situated in the State of Iowa, $1000 in cash, an account for $400 rent due from appellant, and about $200 in chattel property. There is some testimony that he also owned a mortgage for $3000. Appellant is the only witness who testified to that fact, and from his testimony it appears this mortgage, if it existed, was, in fact, the property of appellee. He owed no debts. Within a day or two after his burial his widow and two sons held a conference and it was agreed that there should

be no administration upon the estate. During the lifetime of his father Stephen H. Drum had received advancements from him, amounting, with interest, to the sum of $6000. He proposed that if the note and mortgage for $2000 which the estate held against him should be canceled and delivered to him, he would be satisfied with that and the advancements he had already received as his full share from his father's estate, and that the real estate and remainder of the personal property might be divided between his mother and his brother, Edward Drum, appellant. This proposition was accepted, and it was further agreed that appellee should be given all the personal property of the estate, including the accounts due and owing to Edward W. Drum at the time of his death. As to these facts there is no controversy. In this conference the disposition of the land was determined upon. The two brothers went to the village of Somonauk, where Stephen, the elder, procured the services of L. B. Olmstead, an attorney at law, to draft the deeds which should put the title to the real estate in appellant and appellee. He drew three deeds,—one to be executed by Stephen and his wife to appellant quit-claiming all interest in the whole of the real estate; one from appellee to appellant quit-claiming all interest in the one hundred and thirteen acres of land in Northville township; and one from appellant to appellee conveying to her a life estate in the one hundred acres in Adams township and the use of three rooms in the dwelling house on the farm in Northville township. The note for $2000 was canceled and the mortgage securing the same was released and they were delivered to Stephen H. Drum. The remainder of the personal property was delivered to appellee, and she went into possession of the one hundred acre farm in Adams township. Appellant took possession of the Northville township farm. A short time before the bill was filed herein appellee endeavored to sell a portion of the Adams township farm, when, as she claimed, she discovered for the

first time that she owned only a life estate instead of an estate in fee simple. She thereupon filed this bill, in which, after reciting the death of her husband and that part of the agreement entered into between her sons and herself, as hereinabove set forth, she alleged that by the agreement then entered into it was agreed between her said sons and herself that she should receive all the personal property and a fee simple estate in the farm in Adams township, but that by a mutual mistake of the parties the deed was so drafted as to give her a life estate in that farm instead of an estate in fee simple, as was agreed and intended, and prayed that the deed be reformed so as to express the true agreement and intention of the parties thereto. Stephen H. Drum and appellant were both made defendants. Appellant answered the bill. Stephen H. Drum was defaulted. The cause was referred to the master in chancery of La-Salle county to take and report the proofs. Upon the report of the proof by the master a hearing was had, and the court entered a decree reforming the deed, vesting title to the Adams township land in appellee in fee simple, and entered judgment against appellant and in favor of appellee for $595, being the rent, and interest thereon, which the bill alleged to be due, and costs of suit. From this decree appellant has perfected this appeal.

The grounds upon which appellant relies for reversal are, that the court considered incompetent testimony offered on the part of appellee, and that the decree is contrary to the evidence and to the law. An inspection of this record discloses that some testimony was taken by the master which is incompetent. To this testimony appellant interposed objections and motions to strike, which were not passed upon. By its decree the court specifically based its findings upon the competent evidence in the cause, and upon review it will be presumed that the court considered only the competent evidence if there be any competent evidence in the case. From a careful examination of the record we

are convinced that the decree of the court is amply sustained by the competent evidence in the case.

Appellee and Stephen H. Drum testified on behalf of appellee as to the agreement entered into between appellee and her two sons shortly after the death of her husband, relative to the division and disposition of the estate, both real and personal. They both testified that it was mutually agreed among them that the $2000 mortgage was to be canceled and released, and that, together with the advancements already received by him, should constitute all that Stephen H. Drum should receive from the estate; that the mother should receive all the personal property and an absolute title to the Adams township farm and the use of three rooms in the dwelling house on the Northville township farm, and that appellant should be given the Northville township farm. They both testified that, during this conference, while appellant was present he took no part in the conversation. Appellant, however, upon his part testified that he took what they had a mind to give him, and that if they saw fit to give him the title to the Northville township farm and his mother the title outright to the Adams township farm it was satisfactory to him. He made no objection whatever to the proposals made by his mother and brother, and, in effect, admits that he agreed to and acquiesced in whatever arrangement was made on that occasion. Stephen testifies that he called upon L. B. Olmstead at Somonauk, consulted him about the possibility of being able to settle the estate without administration, told him of the division which had been agreed upon and employed him to draw the necessary release and conveyances. Shortly thereafter Olmstead called at the home of appellant and appellee, who were living together, procured from the appellee an affidavit as to the heirship of the father, and a few days thereafter returned with the release and deeds for execution. Both Olmstead and appellant testified that Stephen was present on this occasion. On the other

hand, Stephen and appellee both testified that he was not there but had returned to his home in Iowa before this visit of Olmstead. Mrs. Drum testifies that while Olmstead read the deed from Edward to her on this occasion, that portion of the deed which limited her estate to one for her life was not read, while, on the other hand, Olmstead testified that he read the whole of the deed and explained to her specifically the extent of the interest in the Adams township farm conveyed to her by this deed. Olmstead was called as a witness on behalf of appellant, and testified that the deed from Edward to his mother was drawn according to the terms given to him and that it was read and fully explained to the parties at the time of its execution. Edward Drum did not testify as to what the agreement was which was entered into between his mother, his brother and himself, but he did testify that at the time he executed the deed to his mother Olmstead read the deed to her and explained to her that she was receiving a life estate, only, in the lands conveyed to her, and that "everything seemed to be satisfactory." A short time after the father's death Miss Cole, a sister of Mrs. Drum, came to live with her at the dwelling house on the Northville township farm. She testified that a short time after she arrived there appellant asked her if she knew whether his mother had made a will during a recent visit she had made to the State of New York, and that she told him she had not and asked him why he desired to know, to which she testifies he replied that when his mother went away she was angry; that they had had a little trouble and he was afraid she had made a will, and that his mother had promised him if he would be a good boy she would give him the Adams township farm. Edward testified that he did not remember having such a conversation and did not think his aunt had said anything to him about that.

Appellee testifies that when she discovered the mistake in the deed she informed appellant of the fact, and that

he told her he was not surprised at all; that he thought Olmstead did not know what he was doing when he drew the deeds. On his cross-examination appellant did not deny that he had made that statement, but says that he does not think, when the matter was first mentioned to him, that he said he was not surprised. Miss Cole testified that when the mistake in the deed was discovered she called at the office of Olmstead and informed him of the fact, and that he told her he would swear that the deed conveyed to Mrs. Drum an absolute fee simple title. This testimony was produced in rebuttal of the cross-examination of Olmstead wherein he denied that conversation. Olmstead admitted that it was Miss Cole who called his attention to the mistake, and that she informed him that Mrs. Drum had been given a life estate, only, in the farm instead of a fee simple estate, as was intended. He admitted that he thereupon secured copies of the deeds which he had drawn on that occasion, from the recorder of LaSalle county, for the purpose, as he says, of determining whether he had made a mistake in the description, although he does not contend that Miss Cole had complained of any other mistake than that Mrs. Drum had been given a life estate, only, in the Adams township farm. Upon his cross-examination Olmstead was asked if some time after he had drawn these deeds he did not prepare a will for Mrs. Drum. He testified that he had no recollection of that fact. The will was then produced, and the witness admitted that it was in his handwriting and that he had signed it as one of the attesting witnesses but still denied having any recollection of the circumstance of drawing and witnessing the will, and he stated that the will itself did not serve to refresh his recollection. By this will the sister, Miss Cole, was given a life estate in eighty acres of the Adams township farm and the remaining twenty acres in fee simple, the remainder in the eighty acres, after the death of Miss Cole, being devised to a son of Stephen H. Drum. Olmstead de-

nied that in a conversation with appellee, in the presence of Miss Cole, in his office, three or four years after the execution of this deed, when appellee was attempting to secure his services in having her name entered on the tax books of LaSalle county as the owner of the Adams township farm, he told her that that land was hers individually and that she could do with it as she pleased. Appellee and Miss Cole both testify that Olmstead made this statement on that occasion.

From the testimony of appellee and Stephen H. Drum as to what agreement was entered into at the conference shortly after the death of the father, and from the testimony of appellant himself that he accepted the proposition just as it was made to him by his mother and his brother, it is clear that the agreement as entered into did not contemplate that appellee should receive a life estate, only, in the Adams township farm, but that she was to receive a conveyance of that farm in fee simple.

The situation and condition of this estate, while, of course, not conclusive as to the agreement or contract entered into among the parties, tends strongly to sustain the contention of appellee. It is clear that appellee and her sons were endeavoring to make a fair and equitable division of the estate of the husband and father, and they were attempting to accomplish this division without the necessity of incurring costs of administration. The testimony discloses that at the time of the death of Edward W. Drum the Northville township farm, consisting of one hundred and thirteen acres, was worth about $100 per acre. The Adams township farm, consisting of one hundred acres, was worth about $70 per acre. The personal estate consisted of the $2000 note and mortgage due from Stephen, $1000 in cash, $400 due from Edward for rent and about $200 in chattel property. Adding to this the advancements of $6000 which had theretofore been made to Stephen, we find the total value of the estate at the time of the death

of Edward W. Drum to be $27,900. By conveying to Edward the Northville township farm he received in value $11,300 as his portion of the estate, less whatever the use of the three rooms in the dwelling house by his mother during her lifetime might be worth. Appellee was sixty-three years of age at the time her husband died. By estimating the value of her homestead and dower and her award and adding to that one-third of the personal property remaining, and subtracting that sum from the total value of the estate, including the $6000 theretofore advanced to Stephen, it will be seen that one-half of the remainder (which would be the value of the share of each of the sons) would be approximately the value of the North-ville farm. It will thus be seen that by giving appellee the absolute title to the Adams township farm by this agreement, it was Stephen, and not appellant, who was making concessions to his mother. There is not a suggestion in this record that it was intended that Edward should be given any advantage in this settlement or should receive any more than his legal share and interest in the estate of his father. The decree of the court in reforming this deed by striking out the words limiting the estate of appellee in the Adams township farm to a life estate is neither contrary to the evidence nor the law. The proof discloses that a mistake of fact was made, and this mistake, which was mutual and common to both parties to the instrument, was proven by clear and convincing evidence.

The decree found further that by the terms of this agreement between the parties appellant agreed and promised to pay to appellee $400 rent due his deceased father at the time of his death, with interest on the same from the date of the death of his father, and decreed that he should pay her, within sixty days from the date of the decree, the sum of $595, being the rent due from him, with interest thereon at the rate of five per cent per annum. Complaint is made that the court erred in so decreeing, and that there

is nothing in the record on which to base this finding and
decree of the court. The bill alleged that at the time of
his death Edward W. Drum was the owner of the sum of
$400 rent money due him from appellant for the Northville
township farm for the year previous to his death; that
appellant, although often requested, had neglected and re-
fused to pay appellee said sum, and prayed that appellant
be decreed to pay appellee said sum of $400, with interest
since the death of Edward W. Drum. By his answer ap-
pellant admitted that at the time of his father's death he
was the owner of the sum of $400 rent due from appellant,
and that by the terms of the agreement entered into among
his mother, his brother and himself it was agreed that his
mother should have, among other things, all accounts due
his father at the time of his death. On the hearing appel-
lee testified that appellant had never paid this rent money.
Appellant did not testify upon this subject at all. The as-
signment of this account was a part of the same agreement
whereby the lands in question were contracted to be con-
veyed to appellee. While a bill in equity could not be main-
tained if brought merely for the purpose of recovering this
rent money, it does not follow that a court of equity, un-
der the circumstances of this case, cannot enter a money
decree for the payment of the amount of rent money due.
The controversy here contains an equitable feature which
authorizes a court of equity to take cognizance, and that
court should retain jurisdiction for all purposes, and may
establish purely legal rights and grant legal remedies grow-
ing out of the contract which might otherwise be beyond
the scope of its authority. *Stickney* v. *Goudy,* 132 Ill. 213.

The proof here is sufficient to authorize the entry of a
money decree for the payment of the $400 due but we do
not deem it sufficient to authorize a decree for interest.
While appellant admits, by his answer, that at the time of
his father's death he owed him $400 for rent, and also that
all accounts due his father were by the agreement entered

into assigned to his mother, it does not appear whether the lease under which this rent accrued was a written or a verbal one, or whether it was agreed among the parties, at the time they entered into the agreement in question, that $400 was the amount due and that appellant then promised to pay the sum of $400 as the amount of rent due. Neither does it appear, as is alleged in the bill of complaint, that any demand or request had ever been made upon appellant to pay this rent or that he had ever refused to pay it. Under these facts, had appellee brought her suit at law against appellant to recover this amount due her she would not have been entitled to recover any interest, and we know of no reason why a court of equity, under these circumstances, should enforce the payment of interest.

The decree of the circuit court will be modified by striking out of the findings therein contained the following: "The said defendant Edward Drum agreed and promised to pay to the said complainant the sum of four hundred ($400) dollars, the rent that was due the said Edward W. Drum, deceased, for the year prior to the decease of the said Edward W. Drum, with interest on said sum of four hundred ($400) dollars from September 12, 1900, the date of the death of the said Edward W. Drum. The court further finds that there is now due from the said defendant Edward Drum to the said complainant, Julia A. Drum, with interest thereon as aforesaid, the sum of five hundred ninety-five ($595) dollars," and inserting in lieu thereof the following: "It was agreed that all accounts due the deceased should be paid to and become the property of said complainant; that at the time of the death of his father there was then due from Edward Drum to his father the sum of $400 for rent, and that by the terms of said agreement said sum of $400 for rent due deceased became due and payable to complainant, Julia A. Drum," and by striking out of the ordering part of said decree the words and

figures, "five hundred ninety-five ($595) dollars" and inserting in lieu thereof the following: "$400." In all other respects the decree is affirmed.

*Decree affirmed as modified.*