**Benjamin E. Bayer and Barbara Bayer, Appellees, v. Bloch Real Estate Improvement Company, Appellant.**

## Gen. No. 31,905.

1. FORMER ADJUDICATION—*what is estoppel by verdict.* If a question has been determined in a former suit and is again put in issue in a subsequent suit between the same parties, such former determination, if properly presented, is an estoppel by verdict which is conclusive upon the parties to the latter suit though the cause of action may be different.

Bayer v. Bloch, 246 Ill. App. 416.

2. FORMER ADJUDICATION—*estoppel by verdict as available to both parties.* Estoppel by verdict may be availed of as conclusive upon the parties in a later suit even with a different cause of action, as well by the plaintiff as by the defendant.

3. FORMER ADJUDICATION—*necessity of identical parties.* A former judgment or decree when relied on as *res adjudicata* need only have substantially the same parties as the case in which it is pleaded to create an estoppel.

4. FORMER ADJUDICATION—*questions which might have been raised.* *Res adjudicata* extends not only to the questions actually decided in the former case but to all matters which the parties might properly have raised and had determined whether they did so or not.

5. INJUNCTIONS—*incidental power to award damages.* After equity has obtained jurisdiction to enjoin the repetition of trespasses, it may determine damages for past wrongs and decree their payment.

6. FORMER ADJUDICATION—*as applied to consent decree.* The doctrine of *res adjudicata* applies to a decree entered by consent as well as to one *in invitum.*

7. FORMER ADJUDICATION—*injunction decree as bar to later action for damages involved therein.* In a suit to restrain interference with peaceful enjoyment of premises, a consent decree entered on motion of complainant's solicitor and upon stipulation is *res adjudicata* on the question of damages for prior interference with enjoyment and a bar to a later action between substantially the same parties for such damages.

Appeal by defendants from the Circuit Court of Cook county; the Hon. DAVID M. BROTHERS, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1927. Reversed. Opinion filed November 15, 1927.

JESSE MARCUS, for appellants.

GUERINE & BRUST, for appellees; GUY C. GUERINE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

An action in case was commenced against the defendant corporation and Sol N. Bloch on July 16, 1925, which during a jury trial was dismissed as to Bloch and a verdict returned finding the defendant corporation guilty and assessing plaintiffs' damages at $250.

On October 9, 1926, judgment was entered upon the verdict and this appeal followed.

Plaintiffs' declaration consisted of two counts. In the first it is alleged that on December 23, 1923, while plaintiffs owned lots 3 and 4 in block 37 in the village of Maywood, Illinois, and the same were improved with a dwelling house used as their home, defendant wrongfully and negligently erected, maintained and operated a lumber yard and warehouse on its lots (1 and 2) immediately adjoining, and caused many workmen to be there, who made loud noises and used vile language, and caused large motor trucks and vehicles, emitting vile odors, to be operated there, all of which prevented plaintiffs from enjoying the peaceful possession of their premises, etc. In the second count it is alleged that the district is classified under an ordinance (in part set forth) of said village, and is to be used exclusively for residential purposes; that defendant wrongfully and unlawfully erected, maintained and operated upon its lots a lumber yard and warehouse, and caused acts to be done as mentioned in the first count, whereby plaintiffs were damaged, etc.

In addition to a plea of the general issue, defendant filed an amended special plea, alleging that, before the commencement of the suit, on February 26, 1924, plaintiffs and eleven other persons filed their amended bill in the superior court of Cook county, case No. 397,647, against the present defendant, "wherein they charged such rights, interests and damages therein as plaintiffs now claim in the present suit," etc.; and that in said chancery cause a final decree was entered on November 6, 1924, which is *res adjudicata* as to all matters alleged in plaintiffs' declaration, etc.

On the trial plaintiffs severally testified, and they called five witnesses. Sol N. Bloch, president of defendant, testified for it, as did six other witnesses. To prove the allegations of its said special plea, defendant introduced in evidence certified copies of the

amended bill, answer, stipulation and decree filed in said chancery cause.

According to the allegations of said bill the Bayers, the present plaintiffs, were then the owners of said lots 3 and 4, improved with their dwelling house and home; that the other eleven complainants were owners of other lots and dwellings thereon in the immediate vicinity; that defendant was the owner of said lots 1 and 2 which it was using in connection with its business; that all of complainants' lots, as well as defendant's, were located in a residential district of the village, and had for many years been used exclusively for residence purposes; that blocks 36 and 37, in which all of the lots of the parties were, had been conveyed in June, 1909, to one Downing by deed, containing covenants and restrictions as to the character and location of the dwellings to be erected on the lots in said blocks; that all complainants, as well as defendant, claimed ownership of their respective lots by mesne conveyances under said deed; that in April, 1922, the village passed a zoning ordinance, in which said blocks and the lots of complainants and defendant were classified as being in the "B" residential district; that subsequently, by fraud, defendant obtained from the village a permit to erect a building upon its lot representing that the same was to be used as a four-car garage, but which in fact since its erection has been used by it as a warehouse and salesroom, where lumber and building materials have been stored and sold; that the building was erected in violation of said ordinance and of said covenants and restrictions; that defendant has been and is now maintaining and operating a lumber yard on its lots, to which lumber is brought and piled in high stacks, immediately adjoining the Bayers' home, and has been and is now maintaining many men to do the work of loading and unloading trucks and wagons and piling the lumber, to the great annoyance and damage of the Bayers; that complainants have

requested defendant to desist from these acts, but it has refused so to do; that they have also appealed to the officers of the village, who have refused to take any steps to prevent a continuance of said acts; and that, as they have no adequate remedy at law, defendant should be prevented by injunction from the further continuance of said acts.

The prayer of the bill was that defendant's use of said lots "may be declared to be unlawful and in violation of the restrictions and covenants governing the property, and in violation of said ordinance of the Village of Maywood, and that defendant and all persons claiming under it, * * * and all persons using the premises, may be perpetually enjoined from using or occupying the same as a lumber yard, or as a warehouse, or in any manner or mode except for residential purposes only"; that the occupation of defendant's property, so long as it shall be used for the purposes as above set forth "may be declared to be a nuisance"; and that the court order the removal of the building and also the removal of the lumber, materials, etc. A preliminary injunction also is prayed for. Although in the prayer for permanent relief there is no specific request that complainants be awarded damages for defendant's alleged past acts, the prayer concludes with the usual clause that complainants "have such other relief in the premises as the nature of the case shall require," etc.

In defendant's answer to the bill, while admitting some of its allegations, it denied the material ones, and averred that it had erected said garage on the rear of its lots under a permit first secured from the village (copy of permit set forth) and that it had used the same for the housing of motor vehicles used in its business, and that it had the legal right so to do; further averred that it is engaged in erecting and selling residences, which business requires the use of much lumber and the maintenance by it of lumber yards

near where its building operations are being carried on; that it has used its lots, located within 300 feet of a railroad station, as a lumber yard only temporarily; that other lumber yards, coal yards and steel mills are maintained and operated by other persons in the immediate vicinity, and said lots are not adapted for residential purposes; that the placing of lumber temporarily upon them has not tended to decrease the values of complainants' lots and residences; and that complainants have not been injured or damaged as alleged.

In the stipulation, filed in said chancery cause, it was agreed between all the parties that they *"hereby waive further proceedings;"* that defendant "has agreed to abandon the use of its premises for the purpose of storing lumber thereon and not to further place any finishing or other lumber in said garage, but that the lumber now present therein *may remain there until removed by it in the course of its business;"* and that an order of court may be entered, reciting the facts and the making of this agreement, etc.

In the decree, entered in said chancery cause on November 6, 1924, it is recited in substance that, *on motion of complainants' solicitor,* it is made to appear to the court that all the parties "have stipulated to waive and do waive further proceedings therein," and have stipulated and agreed to certain facts as contained in the stipulation. It is then decreed in substance that defendant, its officers and agents, in pursuance of the stipulation, are hereby restrained from using its said lots (1 and 2) for the purpose of storing lumber or building material thereon, or doing acts contrary to the restrictions governing the use of the land, and from the further storing of any lumber in the building or garage now erected on the land, "and that the lumber now in said garage shall remain until it is used up by said defendant in its course of business;"

and that "no costs shall be assessed against either party, all costs in the matter having been paid."

The main ground urged and argued in the brief of defendant's counsel for the reversal of the present judgment is, that the decree, entered in the chancery suit, is *res adjudicata* as to the present controversy, and a bar to any recovery by plaintiffs in the present action.

In the case of *Hanna v. Read,* 102 Ill. 596, 602, it is said that it is "not universally true" that, before an adjudication in a former suit can be made available as an estoppel, it must appear that the thing sought to be recovered and the cause of action in both suits be the same; that, "where some specific fact or question has been adjudicated and determined in a former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties, its determination in the former suit, if properly presented and relied on, will be held conclusive upon the parties in the latter suit, without regard to whether the cause of action is the same in both suits or not;" that this species of estoppel is known to the law as an "estoppel by verdict," and is equally available to a plaintiff in support of his action, when the circumstances warrant it, as when offered by a defendant as matter of defense; and that, "whether the adjudication relied on as an estoppel goes to a single question, or all the questions involved in a cause, the fundamental principle upon which it is allowed in either case is, that justice and public policy alike demand that a matter, whether consisting of one or many questions, which has been solemnly adjudicated by a court of competent jurisdiction, shall be deemed finally and conclusively settled in any subsequent litigation between the same parties, where the same question or questions arise, except where the litigation is a direct proceeding for the purpose of reversing or setting aside such adjudication." And in said *Hanna* case it is also said

(p. 605) that "it is sufficient for the purposes of the rule relating to a former adjudication, when relied on as an estoppel, that the parties be *substantially* the same." (See 34 C. J. p. 757, ¶ 1166; *Wright v. Griffey,* 147 Ill. 496, 499; *Gounaris v. Pavlakos,* 202 Ill. App. 268, 270.) In *Godschalck v. Weber,* 247 Ill. 269, 274, it is said: "The doctrine of *res adjudicata* extends not only to the questions which were actually decided in the former case, but to the whole controversy,—to all matters properly involved which *might* have been raised and determined, and to all grounds of recovery or defense which the parties *might* have presented, whether they did so or not." (See, also, *Stickney v. Goudy,* 132 Ill. 213, 231; *South Park Com'rs v. Ward & Co.,* 248 Ill. 299, 312.) In 14 R. C. L. p. 322, par. 21, the author says: "It is a well settled and a familiar rule, applicable in proceedings to obtain an injunction, that when a court of equity acquires jurisdiction of a cause for one purpose, it may retain it generally. * * * The purpose of such retention is to enable the court to do complete justice between the parties. It may, therefore, retain the cause for the purpose of ascertaining and awarding the apparent damages, as something which is incidental to the main relief sought." And again the author says (p. 457, par. 157): "Therefore, as incident to the relief by injunction against a continuing trespass, the court may, in a proper case, consider and settle the question of damages. * * * The party entitled to damages *may waive them,* if he chooses, by not furnishing evidence to enable the court to measure them in money, which is an advantage to the defendant, but does not defeat the action." (Citing *Garvey v. Long Island R. Co.,* 159 N. Y. 323, 332.) In *American Hide & Leather Co. v. Anderson,* 153 Ill. App. 79, 81, it is said: "Though a court of equity would have no jurisdiction to decree only payment of damages for past trespasses, yet if it obtain jurisdiction in order to enjoin the repetition

of the trespasses, it may determine the damages for past wrongs and decree their payment instead of relegating the parties to a court of law for this relief.'' (Citing *Keith v. Henkleman,* 173 Ill. 137.) In *Merriam v. Merriam,* 207 Ill. App. 474, 478, it is decided that the doctrine of *res adjudicata* applies to a decree entered by consent as well as to one rendered *in invitum,* citing *Harding v. Harding,* 198 U. S. 317, 335, where it is said: ''The general rule in Illinois undoubtedly is that a consent·decree has the same force and effect as a decree *in invitum.''* In the case of *Stickney v. Goudy, supra,* an action in assumpsit was brought to recover damages for an alleged breach of contract and certain pleas of the defendant presented the question whether the matters were adjudicated by a decree entered in a prior suit in equity, and it was held that such decree was a bar to the action. It was contended, conceding that it was within the jurisdiction of the equity court to adjudicate upon Goudy's liability for damages, that the pleas did not show that such question was in fact litigated and determined, but our Supreme Court held in substance that this did not make any difference, saying (132 Ill. 231): ''Whether, as a matter of fact, in deciding the suit in equity, the court passed upon the question of damages, does not appear from the decree. * * * As the question of damages was involved and was in controversy, the fair inference from the language of the decree is that it was decided. But, however, that may be, *the decree is res adjudicata whether the court passed on the question of damages or not.''*

In view of these authorities, and applying them to the facts as disclosed in the present transcript and as above outlined, we are of the opinion that the contentions of defendant's counsel are well founded; that the consent decree, entered in said equity suit upon motion of complainants' solicitor and upon stipulation, is *res adjudicata* of the controversy in the present

suit at law, and is, under the doctrine of estoppel by verdict, a bar to any recovery by plaintiffs herein, it appearing that the parties to the two suits are substantially the same; and that the trial court erred, as a matter of law, in entering the judgment appealed from, and that it should be reversed without remanding the cause.  Furthermore, we think it sufficiently appears, from the language of the stipulation and of the decree, and from the fact of the entry of such a decree, that it was then the intention of the Bayers (the then complainants and the present plaintiffs) and the defendant (Bloch Real Estate Improvement Co.), that such decree should settle all then existing controversies between them, including any then existing claims of the Bayers for damages, which form the basis for the present suit at law.

Accordingly, the judgment of the circuit court is reversed.

*Reversed.*

BARNES, P. J., and SCANLAN, J., concur.