BARBARA G. BARTH, Plaintiff-Appellant and Cross-Appellee, v. JAMES J. REAGAN, Defendant-Appellee (Northbrook Trust and Savings Bank, Defendant-Appellee and Cross-Appellant).

Second District   No. 2—84—1120

Opinion filed September 4, 1986.

John F. Early, of Early, Collison, Tousey & Regan, of Elgin, for appellant.

S. Keith Collins and Bruce F. Hoffman, both of Pollak & Hoffman, Ltd., of Chicago, and Marshall N. Dickler, of Marshall N. Dickler, Ltd., of Arlington Heights, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Barbara G. Barth, brought this action in the circuit court of Lake County against defendants, James J. Reagan, her former attorney, and Northbrook Trust and Savings Bank (Northbrook), trustee of a land trust. Counts I and II of plaintiff's second amended complaint charged Reagan with legal malpractice. Proceedings relating to those counts continue at the trial level and are not involved in this appeal. Counts III, IV and V charged Northbrook with breaching its fiduciary obligations through various acts pertaining to its foreclosure on plaintiff's residence, legal title to which was

held by Northbrook as trustee of a land trust known as trust No. LT-1233. The trial court granted Northbrook's motion to dismiss counts III, IV and V on the basis of *res judicata*, compromise and settlement and *laches*. Plaintiff appeals from that ruling, and Northbrook cross-appeals from the denial of its petition for attorney fees.

On August 10, 1976, plaintiff purchased a residence in Glenview, agreeing to assume the mortgage indebtedness owed by the seller to First National Bank of Chicago. Concurrently therewith, plaintiff entered into a land-trust agreement with Northbrook under which the residence was made the *res* of the trust. The trust agreement provided that plaintiff was to be the sole beneficiary and that her husband, Edward Barth, was to have sole control over the power of direction. The agreement also provided that all inquiries and bills were to be directed to plaintiff's attorney at the time, James J. Reagan.

On April 14, 1978, Northbrook entered into a loan transaction with Edward Barth in the amount of $29,600, a transaction which purportedly included plaintiff. The loan was evidenced by a note and security agreement and was secured by the assignment of plaintiff's beneficial interest in the land trust. Plaintiff alleges she had no knowledge of the loan and that her signature on the note and security agreement was forged, an allegation Northbrook admits must be taken as true for purposes of this appeal.

On November 30, 1979, another note bearing the signature of Edward Barth and the purported signature of plaintiff was given to Northbrook to secure a loan for $17,220.41, plus finance charges of $4,800, for the purpose of paying the original note balance by renewal. This note was also secured by an assignment of plaintiff's beneficial interest in the land trust. Plaintiff alleges her signature was again forged and that she had no knowledge of the loan. Plaintiff further claims her signature was forged on a revolving-loan agreement entered into with Northbrook on December 2, 1977, an agreement also bearing the signature of Edward Barth. It should be observed that plaintiff does not challenge the validity of Edward Barth's signature on any of the foregoing documents.

Because of the default in payments of these obligations, Northbrook brought an action in the circuit court of Cook County on April 30, 1980, to foreclose the security agreement and assignment dated April 14, 1978, which was in the nature of a mortgage. Personal jurisdiction over plaintiff was obtained by substituted service on Edward Barth. Neither Edward Barth nor plaintiff filed an appearance, it being plaintiff's contention that she never received notice of the action. On July 29, 1980, the court found plaintiff and Edward Barth to be in

default and entered a decree of foreclosure and sale against them. An amended decree was subsequently filed on August 28, 1980. In both the original decree and amended decree, the court found the mortgage held by First National Bank of Chicago to be the paramount lien and ordered plaintiff's residence sold subject to that lien. The court further found the redemption period to be one year from May 16, 1980, the date of the last service of process, or six months from the sheriff's sale, whichever was later.

On September 30, 1980, Northbrook purchased plaintiff's residence at a sheriff's sale for $68,241.31. Thereafter, on October 9, 1980, the circuit court of Cook County entered an order approving the sale and directed that the first mortgagee, First National Bank of Chicago, be paid $23,233.51, the amount the court found due under the amended decree of foreclosure and sale. The court also ordered that the balance, $45,007.80, be paid to Northbrook. No deficiency was found to exist. A sheriff's deed was eventually issued to Northbrook on May 19, 1981.

Shortly after Northbrook received the deed, two of its representatives visited plaintiff and Edward Barth at their home and advised them that Northbrook now owned the property by virtue of the foreclosure. The representatives offered to sell the property back to plaintiff for $100,000. Plaintiff avers that this was the first time she learned of the foreclosure proceedings, of the indebtedness to Northbrook or of the defaults. In a letter dated June 8, 1981, Northbrook confirmed its offer to sell the residence back to plaintiff for $100,000. The offer, however, was contingent on plaintiff paying $650 per month as rent until closing. In addition, plaintiff was required to furnish satisfactory evidence by July 1, 1981, of the ability to close a cash sale by August 1, 1981. In the event she failed to provide such evidence by the specified date, she was expected, according to the letter, to vacate the premises by July 19, 1981.

After learning of the foreclosure and of Northbrook's offer to sell the property back to her, plaintiff retained counsel, who informed Northbrook in a letter dated June 17, 1981, that plaintiff intended to redeem the property. Because plaintiff was unable to arrange adequate financing, Northbrook filed a petition for a writ of assistance to evict her from the premises. Plaintiff, who by now had retained another attorney, responded by filing a petition for equitable redemption from foreclosure on July 23, 1981. The petition alleged plaintiff's lack of notice, the forgeries, as well as the inadequacy of the price received for the property at the sheriff's sale. Additionally, plaintiff charged Northbrook with improperly paying off the first mortgage

held by First National Bank of Chicago. At this juncture it is worth noting that plaintiff never filed a section 72 petition (Ill. Rev. Stat. 1979, ch. 110, par. 72) (now Ill. Rev. Stat. 1981, ch. 110, par. 2—1401) to vacate the decree of foreclosure and sale and therefore the time period for obtaining such relief expired.

On October 15, 1981, following discussions between their attorneys, plaintiff and Northbrook entered into an agreement whereby Northbrook conveyed the property back to plaintiff for $73,871.49, a sum representing the amount paid by Northbrook at the sheriff's sale together with various costs. On the same day, counsel for both parties signed a stipulation—which was submitted by plaintiff's attorney—providing:

> "It is hereby stipulated and agreed by and between the parties to the above-entitled action *** that said action be dismissed with prejudice *** and all matters in controversy for which said action was brought having been fully settled, compromised and adjourned."

Thereafter, on October 20, 1981, the stipulation was filed together with an order that can properly be characterized as a consent judgment. The order states:

> "This cause coming on to be heard on this date upon the Stipulation for Dismissal with prejudice filed herein by the above plaintiff(s) and the above named defendant(s), and the Court having examined said Stipulation and being fully advised in the premises, finds that this cause of action has been fully compromised and settled and the parties have stipulated and agreed to dismissal of the complaint with prejudice ***.
>
> IT IS THEREFORE ORDERED that the petition of plaintiff against defendant for a Writ of Assistance be and the same is hereby dismissed with prejudice.
>
> It is further ordered that the Petition for an Equitable Redemption by the Defendant, BARBARA BARTH against the Plaintiff be and the same is hereby dismissed with prejudice, said equitable redemption having now occurred and said petition thereby being moot."

On March 23, 1982, five months after the dismissal of the Cook County litigation, plaintiff filed the present action in the circuit court of Lake County, naming as the only defendant James Reagan. It was not until plaintiff filed a second amended complaint on February 29, 1984, over two years after the termination of the action in Cook County, that Northbrook was made a party to the action. By that time Edward Barth had disappeared, and his whereabouts, despite North-

brook's efforts, remains unknown.

Counts III, IV and V of plaintiff's second amended complaint are directed against Northbrook and purport to set forth a cause of action for breach of fiduciary relationship. Arguing that the amended pleading contained virtually the same allegations as those made by plaintiff in her petition for equitable redemption in the Cook County action, Northbrook moved to dismiss the three counts against it on the grounds of *res judicata* and compromise and settlement. Northbrook also sought dismissal on the ground of *laches,* asserting that it was severely prejudiced by plaintiff's delay in joining it as a party, particularly since Edward Barth—whose testimony, Northbrook alleged, was crucial to the case—had disappeared. The circuit court of Lake County granted Northbrook's motion to dismiss, citing all three grounds as the bases for its decision.

■■ The first issue to be decided is whether the trial court erred in applying the doctrine of *res judicata* to bar plaintiff from prosecuting this action. The doctrine of *res judicata* provides that " 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.' " (*La Salle National Bank v. County Board of School Trustees* (1975), 61 Ill. 2d 524, 528 (quoting *People v. Kidd* (1947), 398 Ill. 405, 408), *cert. denied* (1976), 425 U.S. 936, 48 L. Ed. 2d 177, 96 S. Ct. 1668.) The doctrine precludes a party from raising in a subsequent action not only "every matter which was offered to sustain or defeat the claim or demand" made in the prior action, but also "any other matter which might have been offered for that purpose." *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478; see also *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 99.

Plaintiff first contends *res judicata* is not applicable for the reason that the October 20, 1981, order entered by the circuit court of Cook County dismissing her petition for equitable redemption was not a judgment on the merits. She bases this assertion on the fact that the order was entered after she had redeemed the property, thereby making the controversy over the relief requested, *i.e.,* equitable redemption, moot. This is evidenced, she says, on the face of the order, which states in part: "[T]he Petition for an Equitable Redemption *** be and the same is hereby dismissed with prejudice, said equitable redemption having now occurred and said petition thereby being moot." Because the property had already been redeemed at the time the order was entered, plaintiff asserts the dismissal of her petition was not

on the merits, since a decision on a moot point is not a decision on the merits.

■ We find no merit to plaintiff's contention. The record discloses that plaintiff was permitted to redeem the property for the amount paid by Northbrook at the judicial sale, together with certain costs, pursuant to an agreement between the parties, an integral part of which involved a stipulation that the parties would dismiss with prejudice their respective pending causes of action. The order subsequently entered by the circuit court of Cook County was, as plaintiff admits in her response to Northbrook's motion to dismiss, in the nature of a consent judgment. A consent judgment or decree operates to the same extent for purposes of *res judicata* as a judgment entered after contest and is conclusive with respect to the matters which were settled by the judgment or decree. (*O'Connell v. Chicago Terminal Transfer R.R. Co.* (1900), 184 Ill. 308; *First National Bank v. Whitlock* (1945), 327 Ill. App. 127; *Merriam v. Merriam* (1917), 207 Ill. App. 474; see *Lee v. Hansberry* (1939), 372 Ill. 369, *rev'd on other grounds* (1940), 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115; *Wascher v. Lundeen* (1969), 111 Ill. App. 2d 452, *cert. denied* (1970), 398 U.S. 950, 26 L. Ed. 2d 289, 90 S. Ct. 1867; *Bayer v. Bloch Real Estate Improvement Co.* (1927), 246 Ill. App. 416. See generally Annot., 91 A.L.R.3d 1170 (1979) (superseding Annot., 2 A.L.R.2d 514 (1948)).) Accordingly, we reject plaintiff's contention that the Cook County order cannot have *res judicata* effect.

Plaintiff also argues that she cannot be barred from maintaining this action on *res judicata* grounds because her cause of action is not the same as the cause of action she brought in Cook County. This lawsuit, she maintains, is for Northbrook's breach of its fiduciary obligations, while the Cook County action was for equitable redemption.

■ ■ It is admittedly sometimes difficult to determine whether two causes of action are to be regarded as identical for purposes of applying the doctrine of *res judicata*. At first glance there appears to be validity to plaintiff's assertion that the two causes of action in question are different. Upon closer examination, however, we are of the opinion that the two actions must be regarded as the same and that the Cook County judgment is *res judicata* of the claims plaintiff seeks to litigate here. In *Builders Plumbing Supply Co. v. Zambetta* (1986), 143 Ill. App. 3d 188, 192, and *Lester v. Arlington Heights Federal Savings & Loan Association* (1985), 130 Ill. App. 3d 233, 238, this court recently said that the test for determining when two causes of action are the same is whether they are based upon the same facts or whether the same evidence would be necessary to sustain both

actions. This test has been employed in numerous other cases. *E.g., Bond v. Dunmire* (1984), 129 Ill. App. 3d 796, 800; *Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 1011; *Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 750; *Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 1061.

In the case before us, plaintiff's second amended complaint against Northbrook contains the same factual allegations of forgery and lack of notice regarding the loans, defaults and foreclosure proceedings that plaintiff raised in her petition for equitable redemption in Cook County. Further, as in the earlier action, plaintiff also charges Northbrook with improperly applying a portion of the proceeds from the sheriff's sale to pay off the first mortgage held by First National Bank of Chicago. Thus, it is apparent that a common core of operative facts underlies both actions and that the evidence needed to sustain this action would also have sustained her action in Cook County had that case not been dismissed as part of the settlement reached between the parties.

Plaintiff, although admitting that her Cook County petition "set forth the factual basis for forgery and breach of fiduciary obligation," essentially takes the position that the two causes of action must be regarded as different because her claim is now for damages whereas in the Cook County litigation she was seeking to redeem her property from the foreclosure sale. Plaintiff argues she could not have stated a cause of action for damages in the Cook County proceeding because such an action would have been in the nature of a setoff or counterclaim to Northbrook's original complaint for foreclosure and the time for filing such a pleading ended when the default judgment of foreclosure was entered against her. Consequently, she contends, the only remedy available to her in Cook County was to seek an extension of the time within which to redeem her property.

■ We find plaintiff's position to be untenable. In the first place, despite plaintiff's assertion to the contrary, equitable redemption was not the only remedy or relief available to plaintiff in the Cook County proceeding. Plaintiff could have filed a petition to vacate the default judgment of foreclosure entered against her. Had she done so, and had the court granted her petition, the parties would have been left as though no judgment had ever been entered. (23 Ill. L. & Prac. *Judgments* sec. 209, at 444 (1979).) Under those circumstances plaintiff could then have proceeded to set forth a cause of action for damages since the record plainly shows that, within the time for filing a petition to vacate, she was aware of all of the matters she now attempts to litigate. This, of course, is based upon the assumption that

the court would have vacated the foreclosure judgment. The point is, however, that because plaintiff did not file a petition to vacate, we cannot say, as plaintiff insists, that she was prevented from seeking damages against Northbrook in Cook County. More importantly, where, as here, the same factual allegations form the basis for two causes of action, the fact that a party proceeds on different theories or seeks different relief does not prevent the operation of *res judicata* principles. (*Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 1010-11; *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 99; *Pierog v. H. F. Karl Contractors, Inc.* (1976), 39 Ill. App. 3d 1057, 1061.) As the court said in *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157:

> "[A] cause of action consists of a single core of operative facts which give the plaintiff a right to seek redress for the wrong concerned. Even though one group of facts may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action. If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action."

In this case it is interesting to note that not only does plaintiff's second amended complaint contain the same factual allegations as were asserted in her petition for equitable redemption, but, apart from praying for damages as a result of Northbrook's alleged misconduct, plaintiff seeks the reestablishment of the financing terms that existed under the mortgage with First National Bank of Chicago. Plaintiff also sought the reestablishment of the financing terms in her petition for equitable redemption. Inasmuch as both actions arise out of a common core of operative facts and involve, at least in part, claims for the same relief, we hold that the two causes of action are identical and that the Cook County judgment is *res judicata* of the matters alleged in plaintiff's second amended complaint.

In reaching this conclusion, we are cognizant that circumstances in a given case may warrant departing from a rigid application of the *res judicata* doctrine. Such exceptions, however, are extremely rare. In what is perhaps the leading case on the subject in Illinois, the supreme court in *Adams v. Pearson* (1952), 411 Ill. 431, refused to apply the doctrine, even though the claims made by the parties were identical to those raised in a prior action. The court was careful to caution, though, against interpreting its holding as a liberalization of the rule of strict application, noting that the facts of the case pre-

sented "a unique and nonrecurrent situation." (411 Ill. 431, 442.) Of particular significance, we think, was the court's observation that "[t]he policies which underlie the doctrine of *res judicata*—protection of the defendant from harassment and of the public from multiple litigation—are not applicable to the peculiar facts here involved." (411 Ill. 431, 442-43.) Unlike the situation presented in *Adams*, the policies underlying the doctrine will be served by barring plaintiff from prosecuting this action, and we therefore see no justification for not invoking the doctrine here. Indeed, we are aware of no authority which has refused to apply *res judicata* when its application would serve the policies it was designed to protect.

■ The second issue to be decided is whether the trial court properly found that plaintiff was precluded from maintaining this action by virtue of the compromise and settlement reached between the parties. Settlements of contested claims are highly favored (*Zamouski v. Gerrard* (1971), 1 Ill. App. 3d 890, 895), and absent mistake or fraud in its procuring, a compromise and settlement agreement is conclusive as to all matters included therein (*Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 404). When a settlement agreement is approved by the court, the parties are thereafter precluded from relitigating matters covered by the agreement. *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 624; *Wessel v. Gleich* (1975), 33 Ill. App. 3d 204, 208.

■ In this case the parties entered into an agreement in the Cook County proceeding whereby Northbrook conveyed plaintiff's residence back to plaintiff for the amount Northbrook paid for the property at the sheriff's sale, together with various costs pertaining to the sale. Plaintiff admits she consented, as part of the agreement, to dismiss her then-pending petition for equitable redemption. Plaintiff's petition, as we have indicated, contained allegations of forgery and lack of notice concerning the circumstances surrounding the foreclosure on her residence. Her petition further charged that Northbrook had improperly paid off the first mortgage on the property. The stipulation submitted and signed by plaintiff's attorney, which was part of the dismissal order, states that "all matters in controversy for which said action was brought hav[e] been fully settled, compromised and adjourned." Referring to an affidavit of the attorney who represented her in the Cook County litigation, plaintiff contends it was never her intent or understanding that the stipulation or order would operate as a bar to the claims alleged in the present action. It is apparent from the record, however, that any mistake as to the extent of the compromise and settlement was unilateral, and the general rule is that a uni-

lateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim. (15A Am. Jur. 2d *Compromise and Settlement* sec. 34, at 808 (1976).) Plaintiff does not dispute her attorney tendered the stipulation. Under the circumstances we must construe the language most strongly against her. (11 Ill. L. & Prac. *Compromise and Settlement* sec. 3, at 80-81 (1981).) We interpret the stipulation to mean exactly what its language says—namely, that the parties settled and compromised "all matters in controversy." Inasmuch as plaintiff's second amended complaint alleges the same matters which were "fully settled, compromised and adjourned" in the Cook County litigation, we find the trial court did not err in ruling that plaintiff's present action is barred by the doctrine of compromise and settlement.

In light of our holding that principles of *res judicata* and compromise and settlement prevent plaintiff from prosecuting this action, we do not consider it necessary to decide whether the particular facts of this case also warrant application of the doctrine of *laches*.

■ We next turn to a consideration of Northbrook's contention that the trial court erred in denying its petition for attorney fees. Northbrook bases its claim for fees on a provision in the trust agreement which states:

> "In case said trustee shall make any advances of money on account of this trust or shall be made a party to any litigation on account of holding title to said real estate or in connection with this trust, or in case said trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, injury to person or property, fines or penalties under any law or otherwise, the beneficiaries hereunder do hereby jointly and severally agree that they will on demand pay to the said trustee with interest at the highest lawful rate, all such disbursements or advances or payments made by said trustee, together with its expenses, including reasonable attorneys' fees ***."

Northbrook argues that this provision contractually obligates plaintiff to pay its attorney fees. Plaintiff cannot, it contends, on the one hand seek to recover damages for its alleged breach of obligations arising from the trust agreement and at the same time avoid the provision in the agreement pertaining to the payment of attorney fees. Such a position, according to Northbrook, is "logically inconsistent." The simple answer to this argument is that, although the trust agreement establishes the trustee/beneficiary relationship between the parties, plaintiff's cause of action is not premised on any breach of the terms of

the agreement but on Northbrook's alleged breach of the fiduciary duties imposed on it by law. In other words, plaintiff is not, as Northbrook insists, relying on the agreement to establish a cause of action while at the same time seeking to avoid the terms of that agreement. Thus, we see nothing inconsistent in plaintiff's claim that she cannot be forced to pay Northbrook's attorney fees. Indeed, we conclude that Northbrook is not entitled to a fee award. In *Ellis v. King* (1949), 336 Ill. App. 298, this court held that a trustee was not entitled to recover attorney fees from the trust estate incurred in litigation hostile to the beneficiary. (336 Ill. App. 298, 307.) The same rule applies, in our opinion, when the trustee seeks fees directly from the beneficiary. The provision in the trust agreement on which Northbrook relies does not compel a different result. Such a provision cannot rationally be construed as allowing a trustee to recover attorney fees incurred as a result of litigation involving allegations of misconduct on the part of the trustee. Rather, we agree with plaintiff's assertion that the provision is designed to prevent Northbrook from having to pay fees arising because of litigation to which it is incidentally joined because of its position as a trustee. As such, we affirm the trial court's denial of Northbrook's petition for attorney fees.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

HOPF and SCHNAKE, JJ., concur.