CHARLES KOEN & ASSOCIATES,
Plaintiff–Appellant,

v.

CITY OF CAIRO and Allen Moss,
Defendants–Appellees.

No. 89–3611.

United States Court of Appeals,
Seventh Circuit.

Argued June 7, 1990.

Decided Aug. 3, 1990.

Samuel H. Liberman, St. Louis, Mo., Richard G. Younge, E. St. Louis, Ill., for plaintiff-appellant.

John G. Holland, Jr., John G. Holland, Cairo, Ill., for defendants-appellees.

Before COFFEY and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Charles Koen & Associates (Koen) appeals from the district court's grant of summary judgment in favor of the defendants on Koen's claims under 42 U.S.C. § 1983. The district court concluded that, as the result of prior proceedings in an Illinois state court, Koen's federal claims were barred by application of claim and issue preclusion under Illinois law. For the following reasons, we affirm.

I

BACKGROUND

A. *Procedural History in the Illinois Court*

In September 1985, Charles Koen's building, the Security Bank Building in Cairo, Illinois, was destroyed by fire. The building was still standing, but was burned and gutted. Some time thereafter, United States Fidelity and Guaranty Company (USFG), the insurer of the building, paid part of the loss, but withheld further payment after authorities concluded the fire was caused by arson. In November 1987, Koen sued USFG in Alexander County Circuit Court to recover the balance of his insurance claim. USFG responded by filing a motion for leave to deposit money with the state circuit court. This motion was, in effect, an attempt to deposit the amount of its settlement offer with the court pending a response to that offer from Koen.

On December 21, 1987, USFG filed a motion for court approval to pay demolition expenses. This motion was an attempt to comply with Illinois law, which requires an insured claimant or property owner to submit a certificate to the insurance company that directs it to pay the amount of unpaid delinquent property taxes and unpaid demolition expenses to the appropriate governmental unit. Although the City of Cairo had determined that its cost of demolition would be $62,810, Koen was seeking an alternate means of demolition and would not issue the required certificate to USFG.

On February 16, 1988, the state circuit court ruled on USFG's motions as follows: Koen would have until February 19, 1988 to submit a bid to the city for the demolition. If, by February 19, Koen had not submitted a bid, then the motion of USFG to pay $62,810 to the city would be granted and the city would, in good faith, accept a bid for the demolition not to exceed $62,-810. The order further stated that, once

the city accepted a bid, it would be empowered to effect demolition of the building.

On March 3, 1988, the state circuit court ordered USFG to deposit with the court $62,810 for the demolition. It further ordered that Koen's contractor, Hockett Demolition/Construction, be hired to effect demolition for $41,500 and that Hockett's fee be paid out of the $62,810 on deposit with the state circuit court. The balance of Hockett's fee left over from the $62,810 was to be held by the state circuit court along with the other funds deposited with the court by USFG pursuant to its settlement offer. Finally, the court ordered that, if Koen did not give Hockett a notice to proceed by March 20, 1988, or, if Hockett did not complete the demolition by June 18, 1988, the sum of $62,810 would be paid over to the city to accomplish the demolition. The March 3 order was based on an agreement between Koen and the city that Koen would have his building demolished by June 18, 1988, and that, if the building was not demolished by that date, Koen would allow the city to complete the demolition and to receive the demolition fund deposited in the state circuit court as compensation for the job. *See* Memorandum and Order, No. 89–4081 at 2–3 (S.D.Ill. Oct. 31, 1989) [hereinafter Mem. Order].

On July 6, 1988, the city moved to intervene as of right in the suit on grounds that, pursuant to both the agreement between the parties and the March 3 order of the state circuit court, demolition had not been accomplished by the June 18 deadline. Also, pursuant to the March 3 order, the city moved the state circuit court to disburse to the city the $62,810 in funds escrowed with the court for purposes of demolition. On July 29, 1988, the state circuit court, without objection, granted the city's motion and ordered that the $62,810 be paid over to the city for the purpose of demolition of the premises.

On August 29, 1988, the city filed a motion for authority to demolish the premises. Koen responded by filing a motion to stay and a motion to set aside the prior orders. On October 18, 1988, the court found that the agreement for demolition entered into between the parties should be enforced and granted the city the authority to demolish, but stayed the exercise of this authority for thirty days. The court also denied Koen's motion to set aside.

On October 25, 1988, the Cairo City Council authorized the taking of bids for the demolition work. Before any demolition bids were submitted, Koen began making plans to rehabilitate the building and acquired a temporary building permit that enabled him to construct a temporary roof over the building. On November 22, 1988, the Cairo City Council considered and rejected two bids to demolish the premises.

On December 6, 1988, in response to Koen's motion for another stay, the state circuit court made the following findings: (1) that the granting or denying of a building permit and the determination of whether a structure should be demolished (absent arbitrariness) was within the discretion and authority of the appropriate city officials; and (2) that the state circuit court's February 16, 1988 order based on the parties' agreement for demolition continued in full force and effect, but would be subject to a stay until the next council meeting. This stay presumably was granted to permit Koen a further opportunity to persuade the Cairo City Council to permit rehabilitation of the building.

On two different occasions, January 24, 1989 and February 14, 1989, motions were made in the Cairo City Council that the $62,810 in funds held by the city for demolition purposes be returned to the state circuit court. There are six members on the city council, plus the mayor. Pursuant to a consent decree entered in 1980 [1] in the

---

**1.** There appears to be some confusion as to the date on which the consent decree was entered. Both the appellant and the state circuit court reference the consent decree as having been entered in 1980. *See* R.15, Ex. O at 2; R.1 (including a copy of a 1980 consent decree). In the district court opinion, however, the court references the consent decree as having been entered in *Kendrick v. Moss,* No. 73–19–C (E.D. Ill.1973). *See* Mem. Order at 4. At any rate, whether the consent decree was entered in 1980 or 1973 is immaterial to this appeal, and for purposes of identification we will refer to the decree as the "1980 consent decree."

United States district court by Judge Foreman, the mayor of Cairo was not to vote unless there was a tie vote among the council members. The votes on both motions were three "yes," two "no," and one "pass." Mayor Allen Moss construed the "pass" as a "no" vote, and cast the "tie-breaking" "no" vote on both motions. On March 14, 1989, a motion was made to accept the lowest of the demolition bids that had been rejected at the November 22, 1988 council meeting. The vote on the motion was three "yes," two "no," and one "pass." Mayor Moss again construed the "pass" as a "no" vote and broke the "tie" by voting "yes."

On March 15, 1989, Koen filed a second lawsuit in the state circuit court seeking a writ of mandamus to compel the city to return the demolition funds to the state circuit court. Koen supported his claim by contending that the council actually voted affirmatively on the motions to return the funds to the state circuit court, but that Mayor Moss improperly construed the "pass" votes as negative votes and thus improperly voted in violation of the 1980 consent decree. This suit eventually was consolidated with Koen's first suit in the state circuit court.

Koen petitioned the state circuit court for a temporary restraining order (TRO) on March 23, 1989 to restrain the city from demolishing the building. He contended that the city was acting improperly by issuing a demolition order after it had issued a temporary building permit and after it had allowed Koen to invest $90,000 in rehabilitating the building. He further claimed that the demolition would be a violation of the Illinois Constitution, which prohibits the taking of private property for public use without just compensation. That same day, the state circuit court granted a TRO pending a hearing on Koen's petition for relief.

On March 27, 1989, after conducting a hearing pursuant to the TRO, the state circuit court concluded that Koen had not presented enough evidence to warrant an extension of the TRO. Thus, the court dissolved the TRO,[2] and the building was demolished on March 28, 1989.

After the demolition, on April 20, 1989, Koen filed an amended petition for mandamus in the state circuit court, in which he again sought to have the $62,810 in demolition funds held by the city returned to the state circuit court. He again alleged that the council votes on the motions to return the money were improper because of Mayor Moss' erroneous construction of the "pass" votes as "no" votes. He also asserted that the council's March 14 vote to accept a previously rejected demolition bid was illegal because the scope of the demolition work had changed since the bids originally were solicited.

On May 17, 1989, the state circuit court entered its findings of fact and order in both Koen's first and second lawsuits. The court began by noting that the city and Koen had entered into an agreement, reflected in the court's February 16 and March 3, 1988 orders, by which Koen agreed to have his building demolished and the city agreed to forego legal action regarding the demolition of the building. The court then noted that "[n]othing has changed the effect of these orders, nor the agreement of the parties." R. 15, Ex. O at 2. The court also explained that, prior to the demolition of the building, "plaintiff had made a cursory attempt to rehabilitate the structure, and the Court did in fact allow various stays in the original demolition order." Id. However, the court added, "[w]hen it was obvious that restoration was not forthcoming, this Court denied plaintiff's request for an injunction against the City for demolition." Id. The court then analyzed the plaintiff's mandamus action regarding the city council votes on the return of the demolition funds to the court. The court noted the dispute over how the "pass" votes were to be counted pursuant to the decree, but concluded that "a resolution of [this dispute] is unnecessary in deciding this case." Id. It reasoned that this

---

2. On March 27, 1989, plaintiff also filed a complaint in United States district court seeking a TRO against demolition of the building and seeking to have the demolition fund released from the city back to the circuit court. See infra. Service of process, however, was not obtained in time to stop the demolition.

dispute was irrelevant because, even if the votes had been construed to require the city to return the demolition funds to the court, "nothing substantial would have changed. The building would still have been demolished pursuant to the parties' original agreement, and the cost of same taken out of the deposited money." *Id.* at 3. The court also addressed Koen's argument that the city's vote to accept a previously rejected demolition bid violated Ill. Rev.Stat. ch. 24, para. 9–2–105, which, under certain circumstances, requires the board of local improvements to readvertise for bids. The court concluded that the statute was inapplicable to Koen's situation. *Id.*

Finally, the state circuit court considered Koen's request for money damages against the mayor, treasurer, and certain city council members, which was "raised for the first time in the plaintiff's closing argument." *Id.* The court concluded that this request for a money judgment, which was not raised in the pleadings, and was asserted against nonparties, was an inappropriate "afterthought." *Id.* at 4. The court thus denied Koen's First Amended Petition for Writ of Mandamus as moot, and ordered that the balance of the $62,810 account left over after paying the demolition contractor be returned to Koen.

### B. *District Court Proceedings*

On March 27, 1989, the day before the building was demolished, Koen filed a complaint in the United States district court against the City of Cairo, seeking a TRO against demolition of the building and seeking to have the city return the demolition fund to the state circuit court. Service of process, however, was not obtained in time to stop the demolition. After the demolition, Koen was granted leave by the district court to file an amended complaint for damages resulting from the demolition. Koen's amended complaint, which also added as a defendant Mayor Moss, in both his individual and official capacity, alleged five claims: (1) that the demolition of the building constituted an unlawful confiscation and destruction of property in violation of the plaintiff's due process and equal protection rights; (2) that the defendants by their actions deliberately discriminated against Koen and the other black citizens of Cairo on the basis of race in violation of 42 U.S.C. § 1983; (3) that the defendants violated the terms of the 1980 consent decree; (4) that the defendants denied the plaintiff due process of law by failure to observe Illinois law regarding proper voting and bid-letting procedures; and (5) that the defendants committed a common law trespass by demolishing the building. Koen sought contempt sanctions (for violation of the consent decree), actual and punitive damages, and further relief, including attorney's fees.

The defendants moved for summary judgment on grounds that the federal suit was barred by the state circuit court's May 17, 1989 order disposing of Koen's two state lawsuits.[3] The district court concluded that plaintiff's claims (3) and (4) above, relating to voting and bid-letting, were barred by issue preclusion because these claims had been addressed explicitly by the state circuit court. The court also concluded that the plaintiff's other federal claims were barred by claim preclusion because they could have been raised in the state circuit court. Applying principles of Illinois law, the court concluded that the plaintiff's federal suit was based on the same set of facts as his state circuit court suit, and that, in effect, all the plaintiff was doing in the federal suit was varying his claims for relief and theories of recovery. Mem. Order at 12. After it concluded that all of Koen's federal claims were barred, the court noted that it no longer had pendent jurisdiction to hear his common law trespass claim.

## II

### ANALYSIS

#### A. *Applicable Principles—Preclusion Rules*

The full faith and credit statute, 28 U.S.C. § 1738, requires that federal courts

---

**3.** The district court noted that Koen did not dispute that the state circuit court's May 17 order was a final judgment. Mem. Order at 11.

give state court judgments "the same full faith and credit ... as they have by law or usage in the courts of such state." 28 U.S.C. § 1738; *see LaSalle Nat'l Bank v. County of DuPage*, 856 F.2d 925, 930 (7th Cir.1988) (and cases cited therein), *cert. denied*, —— U.S. ——, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). In other words, 28 U.S.C. § 1738 requires that state court judgments be given the same preclusive effect that such judgments would be given by the rendering state. *LaSalle*, 856 F.2d at 930 (quoting *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir.1987)). This statutory command is observed by the courts in cases such as this one through the application of the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion).[4] This court recently has had occasion to apply Illinois res judicata law in the context of 28 U.S.C. § 1738. *See Welch v. Johnson*, 907 F.2d 714 (7th Cir. 1990). Welch summarizes the principles of Illinois res judicata law that this court set forth in some detail in *LaSalle*, 856 F.2d at 930–33; *see also Hagee v. City of Evanston*, 729 F.2d 510, 512–14 (7th Cir.1984). In *Wozniak v. County of DuPage*, 845 F.2d 677, 682 (7th Cir.1988), we summarized the closely related concept of collateral estoppel. We pause here only to reiterate the essentials.

The term "res judicata" or "claim preclusion" refers to " 'the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit.' " *LaSalle*, 856 F.2d at 930 n. 2 (quoting *Kirk v. Board of Educ.*, 811 F.2d 347, 351 n. 7 (7th Cir.1987)). The Illinois courts historically have referred to claim preclusion as "estoppel by judgment." *Morris v. Union Oil Co.*, 96 Ill. App.3d 148, 51 Ill.Dec. 770, 774, 421 N.E.2d 278, 282 (1981). Res judicata (claim preclusion) should be distinguished from "collat-

eral estoppel" (issue preclusion), " 'which refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action.' " *LaSalle*, 856 F.2d at 930 n. 2 (quoting *Kirk*, 811 F.2d at 351 n. 7). Issue preclusion historically has been known in Illinois as "estoppel by verdict." *Morris*, 51 Ill.Dec. at 774, 421 N.E.2d at 282.

B. *Application of Illinois Preclusion Rules to this Case*

1. Claim relating to improper bid-letting against the city

■ The district court properly concluded that the plaintiff's claim that he was denied due process by the city's use of improper bid-letting procedures is barred by issue preclusion. In the state circuit court, the plaintiff claimed that the bid-letting procedures used to accept a previously rejected demolition bid were improper because they violated Ill.Rev.Stat. ch. 24, para. 9–2–105. The state circuit court rejected this argument on the basis that paragraph 9–2–105 did not apply to the plaintiff's situation. R.15, Ex. O at 3. This claim clearly is barred by issue preclusion as an issue that actually has been litigated and decided against the plaintiff in an earlier action.

2. Claims against the city relating to the council votes to return the money to the state circuit court

■ These claims[5] stand on a slightly different footing from the bid-letting claim, because the state circuit court concluded that these claims were irrelevant to the ultimate issue of demolition. The court concluded that, because the demolition would have proceeded in any event pursuant to the agreement between the city and Koen, it made no difference whether the

---

4. In *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985), the Supreme Court made clear that, under 28 U.S.C. § 1738, federal courts are obliged to apply both the claim and issue preclusion rules of the state that rendered the prior judgment.

5. These claims include what is styled in the amended complaint as plaintiff's "third cause of action" (alleging a violation of the consent decree) and plaintiff's "fourth cause of action" to the extent that it alleges a violation of due process based on improper voting. R.7 at 3–4.

city retained the demolition money or returned it to the court.

Koen contends that issue preclusion cannot apply here because the district court's resolution of this issue was not a decision "on the merits." We disagree. The state circuit court declared Koen's improper voting claim "moot" or irrelevant, but it did so because it concluded that this claim was superceded by a settlement agreement between the parties that rendered meaningless the relief sought by this claim. In Illinois, a settlement agreement that is approved by a court precludes the parties thereafter from relitigating matters covered by the agreement. *Barth v. Reagan*, 146 Ill.App.3d 1058, 100 Ill.Dec. 541, 547–48, 497 N.E.2d 519, 525–26 (1986); *Keim v. Kalbfleisch*, 57 Ill.App.3d 621, 15 Ill.Dec. 219, 222, 373 N.E.2d 565, 568 (1978); *see also Nationwide Art Center, Ltd. v. Daley*, 149 Ill.App.3d 508, 103 Ill.Dec. 150, 153, 501 N.E.2d 171, 174 (1986). The state circuit court in this case both approved of the agreement between the parties and concluded that the agreement was binding. *See* R.15, Ex. O. Koen admits in his brief that the parties had an agreement and that the state court approved this agreement. Appellant's Br. at 8–9. Although Koen now attempts to argue that the scope of the agreement was limited to the allocation of funds for the demolition, rather than the demolition itself, the state circuit court clearly construed the agreement as a consent from Koen to permit the demolition of his building. R.15, Ex. D, O. The state court's conclusion that Koen entered a binding agreement to have his building demolished bars Koen from relitigating an issue that he contends led to the wrongful destruction. *See Reagan*, 100 Ill.Dec. at 547, 497 N.E.2d at 525.

3. Koen's remaining due process, equal protection, and civil rights claims against the city

■ Koen's remaining contentions against the city are that the demolition of his building constituted unlawful confiscation and destruction of property in violation of due process and equal protection, and that the demolition constituted deliberate discrimination on the basis of race in violation of 42 U.S.C. § 1983. The district court properly concluded that these claims were barred by the Illinois law of claim preclusion. Under Illinois law, "a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or privies from relitigating matters that were raised or could have been raised in the prior litigation." *LaSalle Nat'l Bank v. County of DuPage*, 856 F.2d 925, 930 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). In order for claim preclusion to apply, however, both the state and federal suits must constitute the "same cause of action" under Illinois law. *Id.* at 931. These two suits constitute the same cause of action under both the "proof" and "transactional" tests employed by the Illinois courts. *See id.* at 931–33. Under the "proof" test, essentially the same evidence that would sustain Koen's state mandamus action, (i.e., evidence that the mayor's characterization of city council votes violated the 1980 consent decree), would be necessary to sustain Koen's claim that the demolition of the building was a violation of equal protection. The state and federal suits also constitute the same cause of action under the transactional test, because they both arise out of the " 'same transaction, incident, or factual situation' "[6]—the controversy over the demolition of the plaintiff's building.

Koen, nonetheless, contends that the causes of action differ because he is seeking money damages in the second action, whereas in the first action, he was seeking only mandamus relief. A similar argument on similar facts was considered and rejected by this court in *Wozniak v. County of DuPage*, 845 F.2d 677, 681 (7th Cir.1988) (plaintiff who brought mandamus action in state court to compel issuance of excavation permit was barred in federal proceeding from bringing section 1983 claim for damages resulting from failure to issue permit). *See also Hagee v. City of Evanston*, 729 F.2d 510, 514–15 (7th Cir.1984)

6. *LaSalle*, 856 F.2d at 933 (quoting *Hagee v. City of Evanston*, 729 F.2d 510, 513 (7th Cir.1984)).

(state suit that sought injunctive relief and federal suit that sought money damages were the same cause of action for res judicata purposes because both suits arose from the same set of facts); *Edwards v. City of Quincy,* 124 Ill.App.3d 1004, 80 Ill.Dec. 142, 147–48, 464 N.E.2d 1125, 1130–31 (1984) (suit to obtain building permit was the same cause of action as a second suit for damages resulting from denial of the permit, notwithstanding the difference in relief sought).

The district court correctly invoked the two principles identified by this court as important corollaries of Illinois res judicata law: (1) " ' "that a party may not maintain two suits based on the same set of facts by the simple expediency of limiting the theor[y] of recovery advanced in the first" ' "; and (2) " ' "that a party may not maintain two suits based on the same set of facts simply by altering the claim for relief from one suit to the next." ' " Mem. Order at 11–12 (quoting *Wozniak,* 845 F.2d at 681 (quoting *Hagee,* 729 F.2d at 514)). The district court properly concluded that Koen's federal suit was merely a change in theory of recovery and claim for relief. *Id.* at 12; *see Wozniak,* 845 F.2d at 681 (change of claim for relief from mandamus to damages action does not prevent application of res judicata); *Hagee,* 729 F.2d at 515 (change of theory of recovery from common law estoppel to constitutional claims does not prevent application of res judicata). The city was a party to the state court suit, and there is no reason to believe that Koen could not have amended his com-

plaint after the demolition to assert these damage claims against the city. As this court stated in *Wozniak,* 845 F.2d at 681, "[u]nder Illinois law, [the plaintiffs] not only could but should have joined their damage claim under Section 1983 with their mandamus claim in state court." For these reasons, the district court correctly concluded that Koen's remaining civil rights claims were barred by claim preclusion.

### 4. Koen's claims against Mayor Moss

■ Koen asserts that his federal claims against Mayor Moss are not barred by res judicata because the mayor was not a party to the prior state action. In the federal action, Moss was sued in both his official and individual capacity. Res judicata bars claims between "the same parties or their privies." *City of Elmhurst v. Kegerreis,* 392 Ill. 195, 64 N.E.2d 450, 455 (1945). Although it is clear under Illinois law that Moss in his official capacity is in privity with the city, *see Consolidated Distilled Prods., Inc. v. Allphin,* 73 Ill.2d 19, 21 Ill.Dec. 853, 855–56, 382 N.E.2d 217, 219–20 (1978); *City of Elmhurst,* 64 N.E.2d at 453–54, it is not clear that Moss in his individual capacity is in privity with the city.[7] We need not, however, pass judgment on the individual capacity issue because there is an alternative ground for affirming the district court on this point.

■ A party may use issue preclusion defensively to bar the assertion of claims that previously have been raised by and decided against the same party who is as-

---

**7.** Although one case from this circuit appears to have held that, under Illinois law, a city officer who is sued under section 1983 in his individual capacity is in privity with the city for res judicata purposes, *Mandarino v. Pollard,* 718 F.2d 845, 850 (7th Cir.1983), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984), it is not clear that the Illinois cases cited in *Mandarino* stand for this precise proposition. *See Consolidated Distilled Prods., Inc. v. Allphin,* 73 Ill.2d 19, 21 Ill.Dec. 853, 855–56, 382 N.E.2d 217, 219–20 (1978) (stating that it made no difference for res judicata purposes whether "individual State officials" or "the Department of Revenue" was the prior party in the suit; this statement does not, however, answer the question whether the individual state officials were sued as officials or in an individual capacity); *City of Elmhurst*

*v. Kegerreis,* 392 Ill. 195, 64 N.E.2d 450, 453 (1945) (in determining that the city superintendent of building construction was in privity with the city for res judicata purposes, the court expressly noted that the superintendent "was not sued personally, but in his official capacity").

Moreover, the general (and federal) rule is that an officer sued in his individual capacity is *not* in privity with the municipal entity of which he is a member. *See Conner v. Reinhard,* 847 F.2d 384, 394–96 (7th Cir.) (rejecting the argument that *Mandarino* embodies a federal rule of claim preclusion that officials sued in their individual capacities are in privity with the government), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988).

serting those claims in the current action. *See In Re Owens,* 125 Ill.2d 390, 126 Ill. Dec. 563, 566–67, 532 N.E.2d 248, 251–52 (1988); *Illinois State Chamber of Commerce v. Pollution Control Bd.,* 78 Ill.2d 1, 34 Ill.Dec. 334, 336–37, 398 N.E.2d 9, 11–12 (1979); *Herriford v. Boyles,* 193 Ill. App.3d 947, 140 Ill.Dec. 769, 774, 550 N.E.2d 654, 659 (1990). Thus, the improper voting and bid-letting claims against the mayor are barred, because these claims were raised below and decided "on the merits" against Koen. *See supra* p. 997. Moreover, the claims that the mayor's improper voting violated due process, equal protection, and the plaintiff's civil rights also are subject to the defensive use of issue preclusion in this case. When the state court decided that the plaintiff's claim that the mayor violated the consent decree was irrelevant to the litigation because of the binding agreement to demolish the building, it necessarily determined that whether the mayor acted with a discriminatory motive was irrelevant to the litigation. Because the plaintiff was a party to the state court litigation, and because this decision was "on the merits," Mayor Moss may use that determination *defensively* against the plaintiff.

### 5. Did Koen have a full and fair opportunity to litigate his claims

 The due process clause imposes an independent obligation on a federal court that applies 28 U.S.C. § 1738 to ensure that the plaintiff has had a full and fair opportunity to litigate the claims sought to be barred in the federal action. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 480–81, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1982); *see also Benton v. Smith,* 157 Ill.App.3d 847, 109 Ill.Dec. 884, 889, 510 N.E.2d 952, 957 (1987) (full and

fair opportunity also is a prerequisité to application of Illinois res judicata principles). The full and fair opportunity to litigate requirement is satisfied so long as minimum due process standards are satisfied. As this court noted in *Jones v. City of Alton,* 757 F.2d 878, 886 (7th Cir.1985), a defendant might be denied a full and fair opportunity to litigate if relevant claims or defenses improperly were excluded in the state proceedings. In this case, however, Koen encountered no such barrier. All of Koen's arguments in support of a claim that the agreement to demolish the plaintiff's building had been abrogated were before the state court. For example, the state circuit court's December 6, 1988 order made reference to the building permit that the city issued to Koen. On March 23, 1989, Koen petitioned for a TRO on grounds that the city had issued an order to demolish his building after it had issued a building permit and allowed Koen to spend $90,000 to reframe the building. Even after the demolition had taken place, Koen filed an amended petition for mandamus that again set forth his contentions that he had received a building permit and had spent funds in an attempt to rehabilitate the building. Thus, the state court clearly had these arguments before it when it made its May 17, 1989 ruling that the settlement agreement among the parties to demolish the building was still in effect.[8]

The state court did, however, exclude Koen's claim for damages against the mayor, treasurer, certain city council members, and a contractor. The state court explained that it was excluding those claims because they were not raised until closing argument, and also because they were raised against nonparties. R.15, Ex. O at 4. The state court was correct in refusing to allow Koen to litigate a money damages

---

**8.** The full faith and credit statute does not permit federal courts to reassess the merits of state court judgments. Thus, we are obligated to give preclusive effect to the state court's determination that there was a binding agreement to demolish the building. Whether the defendant received minimum due process is not synonymous with whether the court below reached a correct decision on the merits. *See American Nat'l Bank & Trust Co. v. City of Chicago,* 826

F.2d 1547, 1550 (7th Cir.) ("due process requires only that a person have a meaningful opportunity to present his claims; it does not guarantee success"), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *cf. Jones v. City of Alton,* 757 F.2d 878, 882, 886 (7th Cir.1985) (plaintiff was not given a full and fair opportunity to litigate his claims when a relevant defense erroneously was excluded).

claim against the mayor when Koen had made no effort to join the mayor in the case and had not even raised the issue until his closing argument. A plaintiff's failure "to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899. Thus, the fact that Koen did not litigate this claim in the state proceedings was not a denial of due process.[9]

## Conclusion

For the reasons stated above, the judgment of the district court is affirmed.

AFFIRMED.

---

9. Because the district court properly granted summary judgment on all of Koen's federal claims against the defendants, it also properly dismissed Koen's pendent state law trespass claim against the defendants.